[Cite as *State v. Petromilli*, 2018-Ohio-2574.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2016-L-071** |
| DECIO R. PETROMILLI, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 001066.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel* and *Paul Kaplan,* Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Matthew C. Bangerter,* P.O. Box 148, Mentor, OH 44061 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Decio Petromilli, appeals from the judgment of the Lake County Court of Common Pleas, convicting him of kidnapping. At issue is whether the conviction is supported by sufficient evidence as well as the weight of the evidence. We affirm the judgment of the trial court.

{¶2} In the early morning hours of December 10, 2015, police were dispatched to the home of one Carmen Jones after a report of an assault. Upon arrival, officers

encountered the victim, Dwaine Dukes, severely beaten and bleeding heavily from various wounds on his face and head. Officer Jerry Sharp, of the Painesville Police Department, testified he knew Mr. Dukes but, because of his battered condition, did not recognize him. Mr. Dukes, who was unsteady, shaking, and difficult to understand, reported that appellant had attacked him in his home and beat him up. According to Mr. Dukes' girlfriend, Diana Needs, appellant was still inside Mr. Dukes' home; she returned to the home and asked appellant to come outside so police could speak with him and appellant peacefully complied.

{¶3} As appellant emerged, he was calm and cooperative. He did not appear to have any injuries to his face, but was bleeding from several pronounced wounds on his right hand. Appellant stated Mr. Dukes attacked him with a knife. Officer Nicholas Scholtz entered Mr. Dukes' home to commence evidence collection. He observed large amounts of blood on the floor as he entered the home as well as blood throughout the kitchen area. He testified there was a couch in the kitchen "covered in blood" and a roll of tape and a heating unit with blood on it. He was also searching for the alleged knife, which was never found.

{¶4} Mr. Dukes testified he met appellant some 20 years ago. Apparently, appellant had asked him if he could stay at Mr. Dukes' home approximately two months prior to the incident. Mr. Dukes allowed appellant to stay, rent free, and use the couch in the kitchen as a bed. Mr. Dukes testified he had repeatedly advised appellant to turn the bathroom ventilation fan off after exiting. Mr. Dukes asserted the fan increased his electrical bill and he wished to save energy. On the night of the incident, appellant left the fan running and Mr. Dukes, who had been drinking, directed him to switch it off.

2

According to Mr. Dukes, appellant looked at him strangely after he made the statement. Because he was unhappy the fan was left on, Mr. Dukes took a roll of masking tape and covered the fan's switch to eliminate the problem.

{¶5} As Mr. Dukes applied the tape, appellant approached and delivered a right punch to his left temple, knocking Mr. Dukes to the floor. According to Mr. Dukes, the blow knocked him out temporarily and, when he regained consciousness, appellant was dragging him from the bathroom into the living room by his head. Mr. Dukes estimated the distance he was dragged was approximately 10'-15'.

{¶6} Shortly after the initial blow, Mr. Dukes heard appellant exclaim "I'm going to kill you." Mr. Dukes testified he yelled for Ms. Needs, who was not a witness to the assault, to call 911. Appellant continued to drag Mr. Dukes near the entryway and ultimately he threw Mr. Dukes onto the couch. Throughout the incident, appellant continued to strike Mr. Dukes with his right fist and, once on the couch, appellant wrapped the masking tape around Mr. Dukes' wrists, in an apparent attempt to bind him. At this point, Ms. Needs emerged from a bedroom, inquired into what was going on, and, with a "surge of energy," Mr. Dukes pulled his hands loose and ran out of the door.

{¶7} Mr. Dukes fled to the home of his neighbor, Carmen Jones. He knocked on her door, but she did not answer. He then attempted to find help at another neighbor's house; again, he received no answer. As he began walking down the street, an ambulance had arrived accompanied by police.

{¶8} Mr. Dukes was initially taken to a local hospital; he was then life-flighted to Metro Health Medical Center. As a result of the incident, Mr. Dukes suffered various

facial fractures. He additionally testified his lip was split, he had long-term damage to his vision, his teeth were chipped, and a broken nose. He remained in the hospital for three days due to his injuries.

{¶9} Appellant was indicted on one count of kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3), and one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1). Prior to trial, appellant moved the court to proceed pro se and, after a full and succinct discussion on record, the trial court granted the motion. After a trial by jury, appellant was found guilty on both counts. The court found the charges merged and the state elected to proceed to sentencing on the kidnapping count. Appellant was sentenced to ten-year's imprisonment. He now appeals and his appellate counsel assigns two errors. Because they are related, we shall address them together. They provide:

{¶10} "[1.] The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence.

{¶11} "[2.] The trial court erred to the prejudice of the defendant-appellant in denying his motion for acquittal made pursuant to Crim.R. 29(A)."

{¶12} When a defendant moves the trial court pursuant to Crim.R. 29, he or she is challenging the sufficiency of the evidence. A "sufficiency" argument raises a question of law as to whether the prosecution offered some evidence concerning each element of the charged offense. *State v. Windle,* 11th Dist. Lake No. 2010-L-0033, 2011-Ohio-4171, ¶25. "[T]he proper inquiry is, after viewing the evidence most favorably to the prosecution, whether the jury could have found the essential elements of the crime

4

proven beyond a reasonable doubt." *State v. Troisi,* 179 Ohio App.3d 326, 2008-Ohio-6062, ¶9 (11th Dist.).

{¶13} In contrast, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Schlee,* 11th Dist. Lake No. 93-L-082, 1994 WL 738452, *4-*5 (Dec. 23, 1994).

{¶14} Witness credibility rests solely with the fact finder, and an appellate court may not substitute its judgment for that of the jury. *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). Hence, in weighing the evidence submitted at a criminal trial, an appellate court must give substantial deference to the jury's determinations of credibility. *State v. Tribble*, 2d Dist. Montgomery No. 24231, 2011-Ohio-3618, ¶30. "The jury is entitled to believe all, part, or none of the testimony of any witness." *State v. Archibald*, 11th Dist. Lake Nos. 2006-L-047 and 2006-L-207, 2007-Ohio-4966, ¶61. "The trier of fact is in the best position to evaluate inconsistencies in the testimony by observing the witness's manner and demeanor on the witness stand - attributes impossible to glean through a printed record." *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21.

{¶15} Preliminarily, although the jury found appellant guilty of both kidnapping and felonious assault, the state elected to proceed to sentencing only on kidnapping. Because the two crimes merged, appellant was *not* convicted of felonious assault. Hence, appellant's arguments challenging the weight and sufficiency of the evidence on

5

the felonious assault charge are unripe. *See e.g. State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶26-27 (if a conviction on an elected crime is reversed for insufficient evidence, the guilty verdict on the remaining count stands and the matter must be remanded for sentencing on the remaining count.)

{¶16} Appellant was convicted of kidnapping, in violation of R.C. 2905.01(A)(3), which provides:

{¶17} (A) No person, by force, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶18} * * *

{¶19} (3) To terrorize, or to inflict serious physical harm on the victim or another * * *.

{¶20} Appellant argues the state failed to meet its burdens of production and persuasion, beyond a reasonable doubt, on the above crime. Appellant maintains the state failed to advance sufficient, credible evidence that he removed or restrained Mr. Dukes. Appellant argues Mr. Dukes' testimony was exaggerated and, because he was intoxicated on alcohol (with a BAC of .216), his rendition of events was not believable.

{¶21} Mr. Dukes testified appellant initially assaulted him in the bathroom because Mr. Dukes reprimanded him for failing to turn the ventilation fan off. Appellant does not dispute the assault. Mr. Dukes further testified appellant dragged him from the bathroom by his head, into the living room area, and ultimately threw him onto the couch. Throughout the incident, Mr. Dukes testified appellant continued to strike him with his right hand. According to Mr. Dukes, appellant attempted to bind him with masking tape, from which he was able to escape and flee the home.

6

**{¶22}** The foregoing demonstrates the state presented sufficient evidence to sustain the jury's verdict. With respect to the weight of the evidence, the jury was free to believe Mr. Dukes' testimony. Because Mr. Dukes was the only witness to the attack, (other than appellant), his version of events was not refuted. Moreover, the state's photographic evidence of Mr. Dukes' condition after the incident supported the reasonable inference that appellant mercilessly beat Mr. Dukes. Similarly, the photos of appellant after the fight strongly support the conclusion that Mr. Dukes did not fight back (appellant had no visible injuries to his face, neck, or head), and that, because of the large cuts to his right hand, appellant did, in fact, use that hand to administer most of the punishment to Mr. Dukes' face. In light of these points, as well as the amount of blood found throughout the residence, the jury could reasonably find that Mr. Dukes' version of events was credible beyond a reasonable doubt. We therefore hold the jury did not lose its way when it concluded that appellant, by force, removed Mr. Dukes from the bathroom and restrained his liberty in order to inflict serious physical harm on him. The verdict was therefore supported by sufficient evidence as well as the manifest weight of the evidence.

**{¶23}** The assignments of error lack merit.

**{¶24}** On June 1, 2017, appellant filed a pro se motion with this court advancing additional arguments on appeal. Via judgment entry, this court elected to treat the pleading as a motion for leave to file a supplemental brief and granted the same. In his supplemental brief appellant alleges:

7

{¶25} "The defendant was denied a fair trial! 'Not' 'even close' to a fair trial due to the cumulative ineffectiveness of counsel, denying the defendant's right to counsel to 'aid' the defendant to defend himself against the wrong charges!" (Sic throughout.)

{¶26} Preliminarily, prior to trial, appellant moved the court to represent himself pro se, with the aid of standby counsel. The court conducted a lengthy and thorough colloquy with appellant, during which the court emphasized that, even though appellant had the right to represent himself, he had two attorneys appointed who were prepared to defend him; and, furthermore, the court repeatedly advised appellant that representing himself, in light of the high-level felonies with which he was charged, was not a good idea.[1] Nevertheless, appellant knowingly and voluntarily desired to proceed pro se. Appellant then signed a waiver of counsel form and proceeded pro se. "[I]t is settled law that a defendant who has elected to proceed pro se cannot later complain of his own ineffectiveness as a grounds for reversal." *United States v. Weisman*, 858 F.2d 389, 391 (8th Cir.1988), citing *Faretta v. California*, 422 U.S. 806, 834-35 (1975), fn. 46. Accordingly, any argument relating to his own ineffectiveness is without merit.

{¶27} Notwithstanding the foregoing, as the trial progressed, appellant advised the court he wished to proceed with counsel. The state did not object and the court permitted stand-by counsel to defend appellant for the remainder of the proceedings. With this in mind, appellant makes several arguments relating to counsel's alleged ineffectiveness.

---

1. Appellant contends the trial court erred in permitting him to proceed pro se because he had difficulty hearing the court as well as the exchanges between the witnesses and the prosecutor. The transcript, however, demonstrates appellant was capable of responding effectively to the court and asking relevant questions, as well as appropriate follow-up questions during his cross-examination. Despite appellant's alleged hearing impairment, the circumstances of the trial reveal he was able to comprehend the dynamics of the proceedings and therefore reasonably participate in his own defense. We discern no error in the court's decision.

8

{¶28} The test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), is the proper standard to apply in assessing whether a defendant has raised a genuine issue as to the ineffectiveness of counsel. To prevail on an ineffective assistance of counsel claim, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal,* 87 Ohio St.3d 378, 388-389 (2000), citing *Strickland* at 687-688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances." *Strickland* at 688. "There is a strong presumption that the attorney's performance was reasonable." *State v. Gotel,* 11th Dist. Lake No. 2006-L-015, 2007-Ohio-888, ¶10.

{¶29} Appellant initially argues trial counsel was ineffective for failing to call several purportedly relevant witnesses, notwithstanding appellant's claim that the witnesses were subpoenaed. Debatable tactical decisions generally do not constitute a deprivation of effective counsel. *State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). The decision to call witnesses is a matter of trial strategy. *See e.g. State v. Kovacic,* 11th Dist. Lake No. 2010-L-065, 2012-Ohio-219, ¶46. "[T]he mere failure to call witnesses for a trial is not a substantial violation of defense counsel's essential duty to his client in the absence of any showing that the testimony of any one or more of the witnesses would have assisted his defense." *State v. Sanders*, 11th Dist. Portage No. 2003-P-0072, 2004-Ohio-5629, ¶58. A reviewing court should refrain from second-guessing an attorney's strategic decisions. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). "This is especially the case where the purported testimony of a person who was not called to

9

testify is based solely on the conjecture of the appellant." *Sanders*, *supra.* In light of the foregoing, we decline to find counsel's failure to call the allegedly relevant witnesses rendered his assistance ineffective.

{¶30} Appellant next takes issue with the responding officers' alleged failure to issue him *Miranda* warnings and their subsequent warrantless search of the residence in which the assault took place. These arguments relate to issues that could have been raised in a pre-trial motion to suppress evidence, which was not filed. The record in this matter indicates that, when officers arrived and questioned appellant, he calmly discussed the events with officers and alleged Mr. Dukes attacked him with a knife. During the officers' initial questioning, counsel could have reasonably concluded there was no formal arrest or a restraint on appellant's freedom of movement of a degree associated with a formal arrest. As such, counsel could have reasonably concluded there was no *Miranda* violation and therefore no need to raise this issue in a motion to suppress. Moreover, even assuming appellant had standing to challenge the officers' entry into Mr. Dukes' home (i.e., he could establish he possessed a reasonable expectation of privacy as a guest), he fails to specifically elucidate how he was prejudiced by the entry. Hence, counsel cannot be viewed ineffective for failing to file a motion to suppress evidence.

{¶31} Appellant next asserts the trial court erred when it excluded evidence of Mr. Dukes' alleged past violent acts. Prior to trial, the state filed a motion in limine to prevent the introduction of Mr. Dukes' past convictions because they were outside the 10-year time limitation set forth under Evid.R. 609(B); they were not crimes of dishonesty or false statement; and they were irrelevant. The trial court granted the

10

motion from the bench. Five of the convictions were outside the 10-year timeframe. And, although the four remaining offenses were alleged to be within the timeframe, they were misdemeanors and therefore not punishable by a term of imprisonment of at least one year and they did not involve crimes of dishonesty or false statement. Thus, under Evid.R. 609(A), they were not admissible to challenge Mr. Dukes' credibility.

{¶32} Appellant alternatively argues he was entitled to testify regarding his knowledge of Mr. Dukes' alleged prior violent conduct in order to establish the victim's state of mind to support his defense of self-defense. Courts have concluded a defendant may so testify. *See e.g. State v. Baker*, 88 Ohio App.3d 204, 208 (9th Dist.1993). Appellant, however, did not elect to testify. Accordingly, this principle of law was not relevant to the case sub judice. Appellant's arguments are without merit.

{¶33} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.