[Cite as *State v. Cottrell*, 2023-Ohio-3932.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-11-014 |
| | : | O P I N I O N |
| - vs - | | 10/30/2023 |
| | : | |
| JEREMY B. COTTRELL, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
Case No. CRI 20220095


Steven H. Eckstein, for appellant.

Jess C. Weade, Fayette County Prosecuting Attorney, for appellee.


**PIPER, J.**

### Introduction

{¶ 1} On April 22, 2022, appellant, Jeremy Cottrell, was indicted in the Fayette County Court of Common Pleas on four counts of aggravated murder, two counts of murder, and one count of kidnapping.[1] The charges stemmed from the death of Annette Lowery,

---

1. The indictment also included one count of aggravated burglary and one count of trespassing; however, the state dismissed those charges prior to trial.

Cottrell's girlfriend at the time, and the death of their unborn child.[2] Cottrell pled not guilty to the charges and the matter proceeded to a three-day jury trial on October 18, 2022. The jury found Cottrell guilty on all counts and Cottrell now timely appeals from his conviction.

**Facts and Procedural History**

{¶ 2} The charges of the indictment arose from events that occurred on March 3, 2022. The testimony at trial revealed that on March 3, 2022, at approximately 11:20 a.m., law enforcement officers with the Washington Court House Police Department responded to a possible suicide at the City Motel in Washington Court House, Ohio. Upon arriving, officers spoke with the owner of the motel who indicated a motel employee had discovered an unresponsive woman lying face down on the bed in Room 18. After entering Room 18, officers observed the victim, who was later identified as Lowery, lying on the bed furthest from the door with a significant amount of blood near her head. Officers confirmed Lowery did not have a pulse and noted that she was cold to the touch.

{¶ 3} Given their initial observations of the scene, including the position of Lowery, her visible injuries, and a pocketknife laying in plain view on the bed, law enforcement concluded the scene was not typical for a suicide. As a result, the lead detective obtained a search warrant and contacted the Fayette County Coroner and Bureau of Criminal Investigation ("BCI") to process the scene.

{¶ 4} Dr. Lenora Fitton, the Fayette County Coroner, testified that she was dispatched to the City Motel for a possible homicide. Upon observing the scene, Dr. Fitton was initially concerned with Lowery's position on the bed, including the placement of her arms and hands. According to Dr. Fitton, Lowery's position was not indicative of a "protective fall," during which Lowery would have braced for contact with the bed. It also

---

2. Counts I, III, V and VII of the indictment related to the death of Lowery, while Counts II, IV, and VI related to the unlawful termination of Lowery's pregnancy.

did not appear to Dr. Fitton that Lowery was "in control of the situation" when she fell onto the bed.

{¶ 5} After completing an assessment of Lowery as she laid, Dr. Fitton turned Lowery over to look for additional physical trauma or injuries. At that time, Dr. Fitton observed a very large, gaping wound in Lowery's neck, in addition to a smaller neck wound and other lacerations and trauma to her face. To the right of the large neck wound, Dr. Fitton observed a "frothy area," which was a result of blood mixing with air bubbles as Lowery had attempted to breathe. Dr. Fitton indicated Lowery was still breathing after the wound was inflicted and that blood was falling into her windpipe at that time. Lowery also exhibited bruising to her face and eyes, and there was evidence she had been strangled.

{¶ 6} After assessing the injuries, Dr. Fitton determined Lowery's cause of death was multiple sharp force trauma with strangulation. Dr. Fitton did not consider suicide as a possible cause of death due to the nature of Lowery's neck wounds and that there were no hesitation marks present. Instead, because of the angle and nature of the cuts, Dr. Fitton was of the opinion that the stabbing occurred from behind Lowery, with a knife consistent with the pocketknife found at the scene. Based upon Lowery's loss of blood, lividity, rigor mortis, and "frothing," Dr. Fitton determined Lowery's wounds occurred within one hour of 11:30 a.m.

{¶ 7} After Dr. Fitton's examination at the scene, Lowery's body was transferred to Montgomery County Coroner Services for an autopsy. The forensic pathologist who performed the autopsy on Lowery testified at trial. During her testimony, the pathologist described Lowery's various injuries, including blunt force trauma, bruises to her forehead, eye, cheek, nose, ear, upper-lip, and the surface of her neck. The pathologist explained that given the amount of bruising, she believed Lowery had been hit by a blunt object or hand multiple times. Lowery also had multiple cuts and stab wounds including multiple

superficial cuts on her forehead, cheeks, and the surface of her neck, as well as two stab wounds on her neck and one on her left temple. One of the neck wounds was more than one-inch wide and punctured Lowery's windpipe and esophagus. This puncture led to the development of a "frothy foam cone" in her neck as Lowery breathed in blood. The second neck wound was deep enough to touch Lowery's spinal column, while the final stab wound to Lowery's temple was approximately two inches deep and went into her skull. Lowery also exhibited signs of strangulation including petechiae in the eyes and bruising to the outside of her neck. Based upon her observations of Lowery's injuries, the pathologist concluded Lowery's cause of death was multiple stab wounds and strangulation.

{¶ 8} Although Lowery was not visibly pregnant at the time of her death, the autopsy revealed that she was pregnant with an approximately 18 to 20-week-old male fetus. The pathologist testified the fetus was healthy and growing prior to the death of Lowery, and that she did not observe any signs of natural disease or injury that could have caused his death prior to Lowery's death. Subsequent DNA testing on the fetus revealed that Cottrell was the fetus's biological father.

{¶ 9} While investigating the events leading to Lowery's death, a detective with the Washington Court House Police Department learned that Lowery checked into the City Motel on the evening of March 1, 2022. Video footage played for the jury showed Lowery checking into the motel, while an unknown person waited in her vehicle. The following evening, a motel tenant heard a man and woman arguing in Room 18. According to that tenant, the arguing continued throughout the night. The following morning, on March 3, a separate motel tenant heard a man and woman arguing in the vicinity of Room 18 approximately 90 minutes before law enforcement arrived. The tenant testified that during the argument he heard the woman crying followed by silence.

{¶ 10} The owner of the motel provided the detective with the motel's security

camera footage. The footage began at approximately 10:35 a.m. on March 2, 2022, and showed a man consistent with the description of Cottrell exiting Room 18 at approximately 10:50 a.m. The man was wearing boots, blue jeans, and a black t-shirt, and could be seen leaving Room 18, entering a dark colored sedan, which was later identified as Lowery's 2005 Chevy Impala, and driving away. No other individuals were seen entering or leaving Room 18 between 10:35 a.m. and 10:52 a.m.

{¶ 11} Thereafter, a deputy with the Highland County Sheriff's Office was notified that Lowery's Chevy Impala had been seen at the Walmart service center in Hillsboro. Officers were dispatched to the Hillsboro Walmart where they searched for Cottrell inside the store and monitored the vehicle. Law enforcement obtained security camera footage from Walmart which showed a barefooted-Cottrell entering the store in blue jeans and a black t-shirt. After learning that Cottrell had entered Walmart shoeless, a detective with the Washington Court House Police Department recalled seeing a pair of brown boots on the side of the road between Hillsboro and the police station. Believing the boots had been "ditched" due to their evidentiary value, the boots were retrieved by law enforcement and sent to BCI. Subsequent DNA testing confirmed that both boots contained traces of Lowery's blood.

{¶ 12} After officers confirmed the vehicle at the Hillsboro Walmart belonged to Lowery, the car was towed to the Washington Court House police department and processed. Inside the vehicle was an empty men's shoebox and a Hillsboro Walmart receipt for men's boots. The receipt displayed a timestamp of 11:56 a.m. and was dated March 3, 2022.

{¶ 13} While at the Hillsboro Walmart, the Highland County deputy was alerted that a dark cherry Chevy Trax had been stolen from a Speedway in Hillsboro. The deputy left Walmart and began to patrol in an attempt to locate the recently stolen vehicle. While

heading northbound on State Route 753 towards Greenfield, the deputy observed a small chevy SUV occupied by a driver whose appearance matched the description provided for Cottrell. The deputy proceeded to follow the suspect vehicle, and after confirming the suspect vehicle was the vehicle stolen from Speedway, the deputy initiated a traffic stop. The suspect vehicle stopped, and the driver immediately opened the driver's side door and exited the vehicle. At that point, the deputy verified the individual was Cottrell. Cottrell informed the deputy that he had stolen the small Chevy because his girlfriend's vehicle was parked at Walmart with a flat tire. Cottrell was then arrested and placed in police custody.

{¶ 14} At trial, the deputy identified Cottrell as the man he arrested that day and testified Cottrell was wearing a black shirt and blue jeans at the time of his arrest. Cottrell's clothing was collected and sent to BCI for DNA testing. DNA testing revealed Lowery's blood on the back pocket of Cottrell's blue jeans. After reviewing the motel's security footage, the deputy confirmed the clothing worn by Cottrell at the time of his arrest was consistent with what the man seen leaving Room 18 was wearing.

{¶ 15} While the above investigation was developing, Kevin Wagner, a BCI agent with the BCI Crime Scene Unit, was processing Room 18 at the City Motel. Wagner testified at trial regarding his processing of the scene which included fingerprinting various items and collecting swabs and items for DNA testing. As a result of Wagner's collection of evidence, several items were subjected to DNA testing, including the pocketknife located on the bed near Lowery, washcloths found in the bathroom, a pair of socks found near the bed, and Lowery's blue jeans. Relevant here, the DNA testing revealed that Lowery's blood was on the blade and handle of the pocketknife, and that the knife's handle contained Y-STR DNA consistent with Cottrell's.

{¶ 16} At the close of the state's case-in-chief, Cottrell moved the trial court for a Crim.R. 29 judgment of acquittal on all counts. Regarding the aggravated murder counts,

Cottrell argued the state failed to provide any evidence of prior calculation and design, and that the state had likewise failed to provide any evidence of prolonged restraint to support a kidnapping offense. The trial court denied Cottrell's motion and Cottrell proceeded to present one witness to testify in his defense. Cottrell's witness was a tenant of the motel on March 3, 2022, and testified that he informed the officers that he may have heard more than one male voice arguing with the woman in Room 18 that morning. After the jury retired to deliberate, Cottrell renewed his Crim.R. 29 motion, which was again denied by the trial court.

{¶ 17} After considering all the evidence, the jury found Cottrell guilty of all seven remaining counts of the indictment. For the purposes of sentencing, the trial court merged Counts I (aggravated murder), V (murder), and VII (kidnapping) into Count III, aggravated murder in violation of R.C. 2903.01(B).[3] The trial court also merged Counts II (aggravated murder) and VI (murder) into Count IV, aggravated murder in violation of R.C. 2903.01(B). The trial court entered convictions for aggravated murder in Counts III and IV, and sentenced Cottrell to consecutive life sentences without the possibility of parole.

**The Appeal**

{¶ 18} Cottrell now appeals, raising the following assignment of error for our review:

{¶ 19} THE TRIAL COURT ERRED IN DENYING THE DEFENDANT-APPELLANT'S CRIM.R. 29 MOTION FOR ACQUITTAL AS THE EVIDENCE PRESENTED WAS INSUFFICIENT TO CONCLUDE THAT GUILT HAD BEEN PROVEN BEYOND A REASONABLE DOUBT IN VIOLATION OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS 10 AND 16 OF THE

---

3. As noted above, Counts I, V, VII, and III related to the death of Lowery, while Counts II, IV, and VI related to the unlawful termination of Lowery's pregnancy.

OHIO CONSTITUTION.

{¶ 20} On appeal, Cottrell argues the trial court erred in denying his Crim.R. 29 motion for acquittal because his convictions for aggravated murder and kidnapping were not supported by sufficient evidence. Regarding the charges for aggravated murder pursuant to R.C. 2903.01(A), i.e., Counts I and II, Cottrell claims the state failed to prove Lowery's murder involved prior calculation and design. Regarding the charges for aggravated murder pursuant to R.C. 2903.01(B) and kidnapping, i.e., Counts III, IV, and VII, Cottrell claims the state failed to establish any separate animus for kidnapping. After our review, we find no merit to Cottrell's claims.

{¶ 21} "The standard of review for a denial of a Crim.R. 29(A) motion for acquittal is the same as the standard of review for a sufficiency of the evidence claim." *State v. Wilson*, 12th Dist. Fayette No. CA2021-10-023, 2022-Ohio-1146, ¶ 27, citing *State v. Robinson*, 12th Dist. Butler No. CA2015-01-013, 2015-Ohio-4533, ¶ 37. "Whether the evidence presented is legally sufficient to sustain a verdict is a question of law." *State v. Kaufhold*, 12th Dist. Butler No. CA2019-09-148, 2020-Ohio-3835, ¶ 9, citing *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). "The relevant inquiry is 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Roper*, 12th Dist. Clermont No. CA2021-05-019, 2022-Ohio-244, ¶ 39, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This test "requires a determination as to whether the state has met its burden of production at trial." *State v. Boles*, 12th Dist. Brown No. CA2012-06-012, 2013-Ohio-5202, ¶ 34.

{¶ 22} As an initial matter, the trial court entered convictions for and sentenced Cottrell on two counts of aggravated murder pursuant to R.C. 2903.01(B). Although the jury found Cottrell guilty of two additional counts of aggravated murder pursuant to R.C.

2903.01(A), he was never sentenced on those charges because they were merged with the R.C. 2903.01(B) aggravated murder charges. "'Absent the imposition of sentence on each and every offense for which [a defendant] was convicted, there is no final appealable order.'" *State v. Garner*, 11th Dist. Trumbull No. 2002-T-0025, 2003-Ohio-5222, ¶ 7, quoting *State v. Collins*, 8th Dist. Cuyahoga No. 79064, 2001 Ohio App. LEXIS 4666 (Oct. 18, 2001). Without a final, appealable order, this court does not have jurisdiction to address the sufficiency of the aggravated murder counts brought pursuant to R.C. 2903.01(A). As such, Cottrell's challenge to the sufficiency of the evidence supporting those charges is unripe for this court's review. *State v. Petromilli*, 11th Dist. Lake No. 2016-L-071, 2018-Ohio-2574, ¶ 15 (finding the appellant's Crim.R. 29 and sufficiency challenge to a merged crime unripe for appellate review); *see also State v. Hendrix*, 1st Dist. Hamilton Nos. C-120194 and C-150200, 2016-Ohio-2697, ¶ 42, citing *Columbus v. Ziegler*, 10th Dist. Franklin Nos. 91AP-1058, 91AP-1070 and 91AP-1071, 1992 Ohio App. LEXIS 1023 (Mar. 3, 1992) (in a criminal case, no final, appealable order exists from an offense that has been merged for the purposes of sentencing); Crim.R. 32(C).

{¶ 23} Turning to the sufficiency of the evidence produced to support Cottrell's convictions for aggravated murder pursuant to R.C. 2903.01(B), that statute states that "[n]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit * * * kidnapping[.]" According to R.C. 2905.01(B)(2), the kidnapping offense with which Cottrell was charged, "[n]o person, by force, threat, or deception, * * * shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim * * * (2) Restrain another of the other person's liberty."

{¶ 24} Cottrell argues his convictions are supported by insufficient evidence, and the trial court erred in denying his motion for acquittal, because the state failed to prove that

Cottrell's restraint or movement of Lowery was anything but incidental to the underlying crime of murder. Essentially, Cottrell claims the state failed to prove the "commission or attempted commission of kidnapping" element of R.C. 2903.01(B). In support of his argument, Cottrell relies upon R.C. 2941.25, and claims that the restraint of Lowery did not have any significance independent of her murder, and therefore, the kidnapping was not committed with an animus separate from the aggravated murder, and he should have been acquitted on those charges.

{¶ 25} After our review of the record, we find Cottrell's argument unpersuasive. As noted above, in order to convict Cottrell of aggravated murder pursuant to R.C. 2903.01(B), the state was required to prove that Cottrell purposely caused the death of Lowery, and unlawfully terminated her pregnancy, while committing or attempting to commit kidnapping. Accordingly, while Cottrell's kidnapping or attempted kidnapping of Lowery is a necessary element of aggravated murder in this case, the sufficiency of a conviction for that crime does not concern whether his charges of aggravated murder and kidnapping are allied offenses of similar import pursuant to R.C. 2941.25(A). *See, e.g., State v. Watts*, 8th Dist. Cuyahoga No. 108707, 2020-Ohio-3282, ¶ 64-66 (indicating the sufficiency of the evidence supporting the appellant's aggravated murder and kidnapping convictions is distinct from whether he could be sentenced on both offenses). Instead, the question is whether a reasonable juror could find the state sufficiently proved each and every element of R.C. 2903.01(B), including the commission or attempted commission of kidnapping.

{¶ 26} In this case, there is no question that Cottrell's conduct supports his aggravated murder conviction. At trial, the state presented evidence that Cottrell and Lowery were alone in Room 18 between March 2 and March 3, 2023. During that time, the couple engaged in a lengthy argument that continued throughout the evening of March 2, and ended with Lowery crying before becoming silent on the morning of March 3. While in

Room 18, Lowery was hit in the head and neck area by a blunt object or hand multiple times and was strangled. While Lowery's face and neck contained numerous lacerations there were also substantial punctures from the pocketknife. One puncture wound to her neck penetrated her windpipe and esophagus, and the other penetrated to her spine. A penetration to her temple protruded two inches into her skull.

{¶ 27} The pocketknife's handle contained Y-STR DNA consistent with Cottrell's, and Lowery's blood was located on the blade. Lowery's blood was also found on Cottrell's jeans and the men's boots found on the side of the road. The coroner testified the stabbing and strangulation ultimately caused Lowery's death and were not consistent with suicide. The coroner further testified the injuries occurred within one hour of 11:30 a.m., during which time Cottrell left Room 18 and drove away in Lowery's vehicle. When considering the above, including the evidence that Cottrell and Lowery were alone in Room 18 and that her injuries were inconsistent with a suicide, a reasonable juror could conclude that Cottrell purposely caused Lowery's death with the pocketknife and purposely terminated her pregnancy.

{¶ 28} It is also clear from the record that Lowery's death was a proximate result of a kidnapping. This court has construed the "restraint of liberty" element to mean "to limit one's freedom of movement in any fashion for any period of time." *In re E.T.H.*, 12th Dist. Butler No. CA2018-04-064, 2019-Ohio-79, ¶ 17, citing *State v. Martin*, 10th Dist. Franklin Nos. 02AP-33 and 02AP-34, 2002-Ohio-4769, ¶ 32. Moreover, "'[p]roof of the restraint of another's liberty does not need to show that such restraint was of a particular duration * * * or was accomplished in a particular manner.'" (Citations omitted.) *State v. Hart*, 12th Dist. Brown No. CA2011-03-008, 2012-Ohio-1896, ¶ 45, quoting *Martin* at ¶ 32. Rather, [m]omentary restraint is sufficient to qualify as restraint; the duration of the restraint does not have to be prolonged. *State v. Hackett*, 7th Dist. Mahoning No. 17 MA 0106, 2019-

Ohio-1091, ¶ 84.

{¶ 29} In this case, the state presented evidence that Cottrell's actions necessarily resulted in a restraint of Lowery's liberty for the purpose of killing her. The record reflects Lowery was stabbed in the neck from behind and did not have control when she fell onto the bed. One of these cuts was more than one-inch wide, while the other was deep enough to touch her spinal column. Lowery was alive and breathing after she was stabbed in the neck and throat, as the evidence shows the knife punctured her windpipe, which then filled with blood and air as Lowery struggled to breathe. Lowery was also strangled, beaten, and cut on the face and neck during the couple's altercation. Given the nature, number, and severity of Lowery's injuries, in addition to the fact that Cottrell possessed the pocketknife and was behind Lowery while stabbing her, a reasonable juror could conclude that Cottrell limited Lowery's freedom of movement and used force to restrain Lowery's liberty to further commit these aggravated murders.

{¶ 30} Upon viewing the evidence in the light most favorable to the prosecution, a rational juror could have found the elements of aggravated murder under R.C. 2903.01(B) proven beyond a reasonable doubt. That is, there was sufficient evidence that Cottrell committed a kidnapping which directly led to the murder of Lowery and the unlawful termination of her pregnancy. Therefore, the trial court properly denied Cottrell's Crim.R. 29 motion and Cottrell's assignment of error is overruled.

{¶ 31} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.