[Cite as *State v. Philpot*, 2024-Ohio-2596.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-07-081 |
| | : | O P I N I O N |
| - vs - | | 7/8/2024 |
| | : | |
| THOMAS EDWARD PHILPOT, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-01-0119


Michael T. Gmoser, Butler County Prosecuting Attorney, and John Heinkel, Assistant Prosecuting Attorney, for appellee.

Engel & Martin, LLC, and Mary K. Martin, for appellant.



**PIPER, J.**

{¶ 1} Appellant, Thomas Philpot, appeals his convictions in the Butler County Court of Common Pleas for four counts of rape, nine counts of gross sexual imposition, and one count of disseminating matter harmful to juveniles. For the reasons detailed below, we affirm.

## INDICTMENT

{¶ 2}   On February 2, 2022, the Butler County Grand Jury returned a 15-count indictment against Philpot involving five minor females.  The incidents occurred between January 2012 and March 2017.  The victims were either relatives, or the children of neighbors for whom Philpot acted as a "family friend."  In relevant part, the indictment listed the following counts as to each victim:

L.P. ("Victim 1")

Counts 1-2: Rape of a child under 10 years old (digital penetration)

Counts 3-4: Gross sexual imposition

E.P. ("Victim 2")

Counts 5-6: Gross sexual imposition

Count 7: Disseminating matter harmful to juveniles

K.S. ("Victim 3")

Count 8: Rape of a child under 10 years old (fellatio)[1]

Counts 9-11: Gross sexual imposition

H.J. ("Victim 4")

Count 12: Rape of a child under 10 years old (digital penetration)

Counts 13-14: Gross sexual imposition

D.J. ("Victim 5")

Count 15: Rape of a child under 10 years old (digital penetration)

Philpot entered a plea of not guilty, and the matter proceeded to a jury trial.

## JURY TRIAL

---

1. This charge was later dropped prior to jury deliberations.

**{¶ 3}** A five-day jury trial commenced on April 24, 2023. The victims, as well as some of their family members testified on behalf of the state. In addition, the state presented testimony from therapists and social workers from the Mayerson Center for Safe and Healthy Children ("Mayerson Center"). As will be discussed later, the state was permitted to show clips from the Mayerson Center interviews.

*Victim 1*

**{¶ 4}** Victim 1 knew Philpot as "Tommy," a neighbor and family friend. Victim 1 testified about four times that Philpot sexually abused her when she was between the ages of four and five. Victim 1 testified that the first time Philpot abused her she was sitting on a couch in her living room. Philpot came over to her and slid his hand down her pants and touched her vagina on her skin, both inside and outside of her vagina. Afterwards, Philpot told Victim 1 not to tell her parents or he would kill them.

**{¶ 5}** Victim 1 testified that the next time Philpot sexually abused her, she had been playing hide and seek near Philpot's apartment. Philpot called Victim 1 over to sit on his lap and proceeded to touch her legs, underwear, and vagina. Victim 1 said Philpot touched her vagina both on her clothing and on her skin. Victim 1 then testified about a third incident when Philpot was using a mobility scooter (he was not disabled). Philpot had her stand in front of him. He then started touching her vagina with his hands, both outside and inside her vagina. Finally, Victim 1 testified about a fourth time when Philpot exposed his penis to her in the kitchen and made her touch it.

*Victim 2*

**{¶ 6}** Victim 2 and Victim 1 are sisters, so Victim 2 also knew Philpot as the neighbor and family friend. Victim 2 testified that the first time Philpot abused her she was six years old, almost seven. She stated that she was in the car, waiting in the Kroger parking lot, as her mother went in to grab something. Philpot was seated in the front

passenger seat. Victim 2 testified that she was "play fighting" with Philpot when he suddenly grabbed her vagina over her clothing. Philpot then told her not to tell her mother.

{¶ 7} Victim 2 testified that the next instance of abuse occurred when she was sitting on a loveseat in her living room. Victim 2 said that Philpot put his hand in her pajamas and began moving his hand in a circular motion over her underwear. Victim 2 then testified about a different time she had been in the living room with Philpot. Victim 2 said she asked Philpot if she could play on his phone. Philpot told her that he did not have any games, but that she could look at his pictures. Philpot then showed her a picture of his penis.

*Victim 3*

{¶ 8} Victim 3 testified that Philpot is her uncle and that he used to babysit her. Victim 3 explained that she was abused between the ages of five and eight. Victim 3 testified that the first time Philpot abused her, she was playing hide and seek with him and the "punishment" for being found was that he would touch her private areas. Victim 3 testified about how Philpot put his hands down her pants and touched the skin of her vagina, on the outside, and moved his hands. Afterwards, Philpot told her that he loved her.

{¶ 9} The next incident related by Victim 3 occurred when she was playing with dolls. Victim 3 explained that Philpot came over and started touching and squeezing her butt on top of her clothing. A third incident occurred when Philpot pulled his pants down in front of Victim 3 and made her touch his penis. Victim 3 testified Philpot told her not to tell anyone or he would kill her.

*Victim 4*

{¶ 10} Victim 4 testified that she is related to Philpot and that he once lived in her home. Victim 4 explained that she would sleep with her siblings on a futon located in the

dining room. Philpot would sleep on the couch in the living room. Victim 4 testified that one night, when she was five years old, she woke up to Philpot touching her vagina on top of her clothing.

{¶ 11} Victim 4 testified about another incident when Philpot was babysitting her. Victim 4 explained that she was in her grandfather's bedroom watching television when Philpot put his hands in her pants and touched her vagina on the skin, both inside and outside her vagina. Victim 4 then testified about another incident where Philpot undid his pants and made her touch his penis.

*Victim 5*

{¶ 12} Victim 5 and Victim 4 are siblings. Victim 5 testified that she was related to Philpot and referred to him as her uncle, or "Uncle Tommy." Victim 5 testified about the family's living arrangements consistent with Victim 4's testimony. Namely, that she slept on a futon in the dining room with her siblings while Philpot slept in the living room. Victim 5 testified that when she was seven years old, she woke up to Philpot sexually abusing her. Philpot had pulled her pants down and was touching the inside of her vagina. Afterwards, Philpot told Victim 5 not to tell her mother.

*Evidence from the Mayerson Center interviews*

{¶ 13} As relevant here, Victims 1, 3, 4, and 5, were each individually interviewed by social workers or therapists at the Mayerson Center after they disclosed the abuse. Following their respective testimonies, the state presented evidence from the interviewers who conducted those forensic interviews.[2] The interviewers were permitted to testify about the victims' statements made during the interviews as being admissible for purposes of medical diagnosis or treatment pursuant to Evid.R. 803(4). The state was

---

2. It is unclear, but it appears Victim 2 was not forensically interviewed.

also permitted to play clips from the forensic interviews consistent with the same rule. The full Mayerson Center interviews were not introduced into the record or otherwise proffered for purposes of appeal. Thus, the full Mayerson Center interviews are not a part of the record.[3]

*Defense case*

{¶ 14} Philpot called two witnesses who provided very limited information. Philpot called his former landlord who testified that Philpot had been a good tenant in the past. Philpot also called a cousin to testify. However, the cousin was not permitted to testify about hearsay statements he heard from Philpot. Philpot's counsel made a proffer that the line of testimony was related to a claim that the victims were financially motivated because of their purported knowledge of a settlement related to hernia surgical meshes.

{¶ 15} Philpot testified on his own behalf and denied the allegations made by the victims. He offered vague testimony about his understanding that there was "several billion dollars" for people with surgical meshes like him and indicated he was entitled to a settlement. Philpot maintained that the victims were "colluding" against him.

*Verdict*

{¶ 16} Following deliberations, the jury returned guilty verdicts on the 14 remaining counts, after the state had earlier dismissed Count 8. The trial court imposed a prison term of 15-years-to-life on Count 1, rape of a minor under 10 years old, and another consecutive prison term of 15-years-to-life on Count 15, also rape of a minor under 10 years old. The trial court imposed concurrent prison terms on the remaining counts. Philpot now appeals, raising five assignments of error for review.

---

3. This is relevant because Philpot raises two assignments of error concerning the Mayerson Center interviews. While Philpot complains the full interviews should have been played to the jury, he did not introduce the full interviews or proffer them for purposes of appeal.

**APPEAL**

{¶ 17} Assignment of Error No. 1:

{¶ 18} THE CONVICTIONS IN THIS MATTER WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 19} Assignment of Error No. 2:

{¶ 20} THE CONVICTIONS IN THIS MATTER WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 21} In his first and second assignments of error, Philpot argues his convictions for gross sexual imposition were not supported by sufficient evidence and were against the manifest weight of the evidence. Philpot presents no argument as to the sufficiency and weight of the evidence related to his rape convictions, or the conviction for disseminating matter harmful to juveniles.

{¶ 22} The concepts of sufficiency of the evidence and weight of the evidence are legally distinct. *State v. Wright*, 2014-Ohio-985, ¶ 10 (12th Dist.). Nonetheless, as this court has observed, a finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.). "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." *State v. Hart*, 2012-Ohio-1896, ¶ 43 (12th Dist.).

{¶ 23} A manifest weight challenge scrutinizes the proclivity of the greater amount of credible evidence, offered at a trial, to support one side of the issue over another. *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). In assessing whether a conviction is against the manifest weight of the evidence, a reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses, and determines whether, in resolving conflicts in the evidence, the trier of fact

clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Morgan*, 2014-Ohio-2472, ¶ 34 (12th Dist.).

**{¶ 24}** Philpot was convicted of nine counts of gross sexual imposition in violation of R.C. 2907.05(A)(4), which prohibits sexual contact with another who is less than 13 years old. Sexual contact is "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

**{¶ 25}** Philpot argues there was no testimony "from anyone that the touching was for the purpose of sexually arousing or gratifying either person." He states that Victim 1, who was between the ages of four and five, never testified that Philpot was sexually aroused. He then highlights portions of her testimony, for example, that Victim 1 testified that the touching made her feel "uncomfortable." He makes the same general argument for all the victims, i.e., that there was no evidence the touching was done for the purpose of sexual arousal or gratification.

**{¶ 26}** However, contrary to his argument otherwise, there is no requirement that there be direct testimony regarding sexual arousal or gratification. *State v. English*, 2014-Ohio-441, ¶ 69 (12th Dist.). Whether the touching was done for the purpose of sexual arousal or gratification is a question of fact to be inferred "from the type, nature, and circumstances of the contact." *State v. Williams*, 2013-Ohio-3410, ¶ 33 (12th Dist.).

**{¶ 27}** After reviewing the record, we find the jury could reasonably conclude that Philpot's actions were done for the purpose of sexual arousal or gratification. The victims testified about each instance in which Philpot touched their erogenous zones or had them touch his penis and the jury was free to infer what his motivation was in making physical contact with them. *State v. Long*, 2020-Ohio-2678, ¶ 23 (12th Dist.). In this case, the

touching occurred at times when the victims were away from other adults, largely isolated or when other people were asleep. Philpot would touch the victims or make them touch him and tell them to keep it a secret. Such evidence supports an inference that Philpot's actions were for the purpose of sexually arousing or gratifying himself as contemplated by R.C. 2907.01(B). *State v. Gesell*, 2006-Ohio-3621, ¶ 23-26 (12th Dist.).

**{¶ 28}** We note that although Philpot does not challenge his rape convictions, he makes general reference to Victim 5's testimony. He states Victim 5 "testified that during the alleged incidents of touching that the only alleged comment made by [Philpot] was for her not to tell." However, Philpot fails to mention that he was convicted of rape for the act perpetrated against Victim 5. Rape, as defined in R.C. 2907.02, does not include an element requiring that the act be done for the purpose of sexual arousal or gratification. Here, Philpot's act of digitally penetrating Victim 5's vagina is sufficient to complete the act of rape. *State v. Zamora*, 2023-Ohio-1847, ¶ 9 (12th Dist.). The same goes for Philpot's convictions for rape involving Victim 1 and Victim 4. As Philpot makes no other arguments, we find his convictions are supported by the weight of the evidence and are not against the manifest weight of the evidence. *State v. Kettles*, 2023-Ohio-4024, ¶ 19 (12th Dist.) (courts only address issues properly raised and argued). Philpot's first and second assignments of error are overruled.

**{¶ 29}** Assignment of Error No. 3:

**{¶ 30}** THE TRIAL COURT ERRED BY ALLOWING IMPERMISSIBLE HEARSAY INTO THE RECORD.

**{¶ 31}** In his third assignment of error, Philpot argues that the trial court erred by allowing impermissible hearsay. However, Philpot does not identify which statements he believes were improper. He only indicates that the statements were made during the Mayerson Center interviews.

**{¶ 32}** It is not this court's responsibility to identify the testimony and evidence to determine which statements Philpot finds objectionable. App.R. 16(A)(7) requires an appellant's brief to include an argument containing the appellant's contentions with respect to each assignment of error presented for review and "the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." *State v. Bowling*, 2024-Ohio-1638, ¶ 3 (12th Dist.).

**{¶ 33}** Moreover, Philpot's argument is poorly constructed, listing only conclusory assertions that this court cannot verify without reviewing the full Mayerson Center interviews, which were not introduced or proffered below. Furthermore, because the victims testified in this case, any statements they made during the forensic interviews were most likely cumulative, and their admission would have been harmless even if they had been admitted in error. Stated differently, Philpot neither identified nor argued an unfair prejudice which would compel this court to reverse any of his convictions. *State v. Smith*, 2020-Ohio-4008, ¶ 46 (12th Dist.). Therefore, Philpot's third assignment of error is overruled.

**{¶ 34}** Assignment of Error No. 4:

**{¶ 35}** ALTERNATIVELY, THE TRIAL COURT ERRED IN NOT ALLOWING THE FULL MAYERSON INTERVIEW [sic] TO BE PLAYED.

**{¶ 36}** Philpot's fourth assignment of error argues the trial court erred by not admitting the full Mayerson Center interviews. He claims that "[i]f parts of the Mayerson interview [sic] are admissible as an exception to the hearsay rule, all the Mayerson

interview [sic] should come in."

**{¶ 37}** However, Philpot misstates the law. Evid.R. 106, known as the "rule of completeness," provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement *which is otherwise admissible* and which ought in fairness to be considered contemporaneously with it." (Emphasis added.) "The overriding purpose of the rule is to prevent one party from taking statements out of context and distorting them." *State v. Arrington*, 2012-Ohio-5009, ¶ 11 (12th Dist.).

**{¶ 38}** Philpot does not address the Evid.R. 106 requirement that the portions of the interviews not presented to the jury were "otherwise admissible." As relevant here, the supreme court has clearly stated that only portions of these types of forensic interviews are admissible when offered under the hearsay exception for medical diagnosis and treatment. *State v. Arnold*, 2010-Ohio-2742, ¶ 44; *State v. Smith*, 2020-Ohio-4008, ¶ 42-46 (12th Dist.). Philpot does not identify which statements would be "otherwise admissible," and therefore it is appropriate to dismiss this argument for the same reason identified in the third assignment of error, namely App.R. 12(A)(2) and App.R. 16(A). Philpot's fourth assignment of error is overruled.

**{¶ 39}** Assignment of Error No. 5:

**{¶ 40}** APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

**{¶ 41}** Philpot's fifth assignment of error argues that he received ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim, an appellant must establish (1) that trial counsel's performance was deficient; and (2) that such deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *State v. Vore*, 2013-Ohio-1490, ¶ 14 (12th Dist.). Failure of either prong is fatal to any claim of ineffective assistance of counsel. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th

- 11 -

Dist.).

**{¶ 42}** First, Philpot asserts that his counsel rendered ineffective assistance by not developing a case that the victims fabricated their stories because he was potentially entitled to money from a settlement due to hernia mesh implants. However, Philpot assumes, without support, that the victims would have testified they were aware Philpot was the potential recipient of this settlement. Moreover, the extent and scope of examination or cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Cooperstein*, 2019-Ohio-4724, ¶ 29 (12th Dist.).

**{¶ 43}** Finally, Philpot raises a hodgepodge of other arguments—his counsel was ineffective for not calling other witnesses and for not objecting properly. He also argues his counsel was ineffective for purportedly withdrawing an objection.[4] These arguments are vague, conclusory, and unsupported by the record. Philpot does not even identify any other witnesses his trial counsel should have called. Philpot further raises an unsubstantiated argument that a juror in his case attended a pretrial hearing. We find these arguments to be unpersuasive.

**{¶ 44}** Based on our review of the entire record, we find that Philpot did not receive ineffective assistance of counsel. Accordingly, Philpot's fifth assignment of error is without merit and overruled.

**{¶ 45}** Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.

---

4. Philpot does not indicate where an objection was withdrawn. He cites to two portions in the record: (1) a time when he was personally addressing the court, and (2) his allocution during the sentencing hearing. At neither point, did Philpot's counsel withdraw an objection. App.R. 12(A)(2); App.R. 16(A).