[Cite as *State v. Kofron*, 2024-Ohio-3233.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-02-022 |
| | : | O P I N I O N |
| - vs - | | 8/26/2024 |
| | : | |
| JAMES KOFRON, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2023-04-0538

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**M. POWELL, J.**

{¶ 1} James Kofron appeals the judgment and sentence of the Butler County Court of Common Pleas. For the reasons set out below, we affirm the trial court's decision.

{¶ 2} Kofron was charged and convicted of eleven counts consisting of rape,

sexual battery, and gross sexual imposition. The victim of the offenses was Andrea,[1] Kofron's daughter. The offenses occurred between October 2002 and June 2012, and Andrea was below the ages of 10 or 13 at the time of all charged offenses. Andrea had previously attempted to tell various people about the abuse during her youth, including her mother, but to no avail. No formal action was taken until Andrea moved out of her parents' home in May 2022 when she was 23 years old. Later that year, she reported the abuse to police.

{¶ 3} On December 21, 2022, West Chester Police Department Detective David Mize arranged to record a controlled telephone call between Andrea and Kofron. Kofron did not know the call was being recorded. During the call, Andrea told Kofron she was not comfortable in Kofron's home because of their relationship. Kofron responded that he did not want her to be uncomfortable, said that he did not have any excuse for what had happened, that it was wrong, and that he would control himself going forward. Kofron repeatedly apologized to Andrea during the call, told her he did not want to be haunted by the past, and said that she should not tell anyone because it would be bad for everyone in the family.

{¶ 4} On December 23, 2022, Detective Mize and another detective went to Kofron's home and spoke with him concerning Andrea's allegations. Kofron told the detectives that Andrea grabbed his genitals on multiple occasions and admitted that it was possible that he let the situation go too far. When asked if he had ever touched Andrea, Kofron stated, "I'd like to say no, but I don't know that I didn't."

{¶ 5} Kofron's trial began on December 18, 2023. At trial, Andrea, Detective Mize and Kofron, among others, testified. The jury returned guilty verdicts on all counts, and

---

1. "Andrea" is a pseudonym adopted for this opinion for the purposes of privacy and readability. *In re D.P.*, 2022-Ohio-4553, ¶ 1, fn. 1 (12th Dist.).

the trial court imposed an aggregate prison term of 40 years to life.

**{¶ 6}** On appeal, Kofron raises three assignments of error.

**{¶ 7}** First Assignment of Error:

THE TRIAL COURT PLAINLY ERRED WHEN IT ALLOWED THE STATE'S WITNESS TO TESTIFY TO AN ULTIMATE ISSUE LEFT TO THE JURY.

**{¶ 8}** Kofron argues part of Detective Mize's testimony at trial was improperly admitted by the trial court because Detective Mize spoke to the ultimate issue for the jury, that is, whether Andrea's allegations were credible and that Kofron abused her. Kofron argues this error was compounded by Mize's testimony that Kofron was "apologetic" during his interview, again indicating that Kofron was admitting guilt.[2] Kofron concedes he made no objection to the testimony at trial and that plain error review applies.

**{¶ 9}** The testimony Kofron primarily objects to arose during Kofron's cross examination of Detective Mize. First, defense counsel questioned Detective Mize about his interview of Kofron:

Def. Counsel: During that conversation [with Kofron on December 23, 2022], I believe you said, well, [Andrea] gave very specific information . . .

Mize: Yes, that's correct.

Def. Counsel: Okay. And then you said, I don't think she's making this up, in my experience, is that the husband has some sort of addiction . . . .

Mize: Yes.

---

2. Kofron also contends the improper admission of Mize's testimony was further exacerbated by the trial court's rulings concerning the testimony of Dr. Lawrence Pathis, a psychologist retained by Kofron, and Heidi Mallot, a licensed independent social worker. The trial court excluded testimony from Dr. Pathis concerning whether Andrea was being truthful. In addition, the trial court allowed Mallot's testimony stating her belief that the barriers preventing Andrea from disclosing the abuse were lifted only after she moved out of Kofron's home. However, Kofron does not make any argument that the exclusion of Dr. Pathis' testimony and the admission of Mallot's testimony was error, despite having the burden of doing so. *Ostigny v. Brubaker*, 2024-Ohio-384, ¶ 38 (12th Dist.). Therefore, we will not address these contentions in our discussion of the first assignment of error.

. . .

Def. Counsel: How did you jump to addiction based on what you knew at that point?

Mize: So that . . . was what we call an investigative strategy, where we offer themes. And the purpose behind offering a theme is really to kind of give people an out . . . nobody, I think, wants to be portrayed as some kind of a monster. So we come up with these themes. And so that was the purpose of [saying] . . . there must be an addiction issue. And this is what led to these behaviors.

Because in my experience the level of detail—that [Andrea] provided is usually . . . there's something to it. So that's . . . why I offered that theme. It wasn't . . . some kind of conclusion I reached . . . . I was just offering a theme to try to . . . see if we could get him to discuss this.

Def. Counsel: And was it also a theme when you said, "The combination of your wife not meeting your needs and your daughter showing interest that it became commonplace to do things?"

Mize: Yes. That was a theme as well . . .

{¶ 10} Later in cross examination, the following exchange occurred regarding the recorded phone call between Andrea and Kofron:

Def. Counsel: . . . The taped call that happened on [December] 21st, did you get the impression that Jim was being supportive of [Andrea] during the call?

Mize: That's part of it, yes. But I also felt like he was being apologetic for the behaviors.

Def. Counsel: And didn't he say four times in different way[s] that he was crushed by hearing this?

Mize: I don't know that it was four times, but I do remember saying those words, yes.

During his own testimony, Kofron acknowledged that he said to Andrea multiple times during the recorded call that he was sorry, and that he did not have any excuse for his actions, and that there would be no similar issues going forward.

- 4 -

{¶ 11} Pursuant to Crim.R. 52(B), plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights or influenced the outcome of the proceedings. *State v. Blanda,* 2011-Ohio-411, ¶ 20 (12th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68. As this court has stated previously, "[n]otice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Clements,* 2010-Ohio-4801, ¶ 7 (12th Dist.), citing *State v. Long,* 53 Ohio St.2d 91, 95 (1978). An error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been different. *State v. Krull,* 2003-Ohio-4611, ¶ 38 (12th Dist.); *State v. Nixon*, 2012-Ohio-1292, ¶ 10 (12th Dist.).

{¶ 12} Detective Mize's statement that there was "something to" Andrea's allegations did not vouch for her credibility at trial or constitute testimony as to the ultimate issue of Kofron's guilt. Instead, review of Detective Mize's testimony shows that Andrea's detailed allegations not only prompted Mize to investigate the matter, but also informed the way he interviewed Kofron. Based on those details and other investigatory practices he learned, Detective Mize expressly testified that he offered "themes" or possible excuses for Kofron's actions to get him to discuss the allegations. Detective Mize stated that at that point these "themes" were not conclusions he had reached. Put simply, Kofron's arguments fail to acknowledge the greater context of Mize's testimony.

{¶ 13} Kofron similarly mischaracterizes Detective Mize's testimony that Kofron was "apologetic" during their interview as being testimony as to the ultimate issue. "[A]pologies. . . may constitute a 'consciousness of guilt'" and when given appropriate context, juries can decide what, if any weight they carry in determining guilt. *State v. Mills*, 2023-Ohio-1094, ¶ 32-36 (6th Dist.), *appeal not allowed,* 2023-Ohio-2236, ¶ 32, quoting *State v. Tvaroch*, 2012-Ohio-5836, ¶ 25-26 (11th Dist.). Detective Mize's

testimony that Kofron was "apologetic" was not so much a conclusion as to Kofron's guilt, but an observation he made of Kofron's words and conduct during the recorded call. This testimony is supported by a review of the call recording. As Kofron himself acknowledged at trial, he repeatedly apologized to Andrea and told her there would be no problems going forward.

{¶ 14} In conclusion, admittance of Detective Mize's testimony was not in error, plain or otherwise. Kofron's first assignment of error is overruled.

{¶ 15} Second Assignment of Error:

THE TRIAL COURT FAILED TO PROPERLY IMPOSE CONSECUTIVE SENTENCES AS REQUIRED BY R.C. 2929.14.

{¶ 16} Appellant argues that the trial court failed to properly impose consecutive sentences in two respects: (1) the trial court did not indicate that multiple offenses were committed as a "course of conduct" as required by R.C. 2929.14(C)(4)(b); and (2) the trial court did not indicate that any need to protect the public arises from appellant's criminal history as required by R.C. 2929.14(C)(4)(c).

{¶ 17} During the sentencing hearing, the trial court made the following findings:

I do believe I have the grounds to be able to impose the sentence that I do, making consecutive findings. Again, I am finding that it is -- these consecutive sentences are necessary to . . . punish the offender. I do find that how I structured this sentence is not disproportionate to the seriousness of the offender's conduct, and the danger that he potentially poses to the public. And the final finding that I'm going to make is that the harm is so great or unusual, that a single term does not adequately reflect its seriousness, or the Defendant's conduct.

In other words, for the record's sake, I could have run everything concurrent to Count I, the life sentence, but to me, that would've grossly demeaned the seriousness of the rape charges. These were individual acts that took place over different time periods, and different stages of life. . . [F]rankly. . . the court is so shocked, and dismayed, and offended by

- 6 -

[Kofron's] conduct . . . there's no way . . . all of these charges should run concurrent . . .

{¶ 18} The trial court's sentencing entry, in turn, provided:

The Court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. The court also finds that:
· Consecutive Sentences are necessary to protect the public from future crime
· Consecutive Sentences are necessary to punish the defendant
· At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses was so great and unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the defendant's conduct.

{¶ 19} It is presumed that multiple sentences are run concurrently to each other unless the trial court makes several specific findings. The first two are that (1) "consecutive service is necessary to protect the public from future crime or to punish the offender" and (2) "that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.41; R.C. 2929.14(C)(4). In addition, the trial court must also find one of the following: (a) the defendant committed a criminal offense while awaiting trial or sentencing (b) the "harm caused by. . . [the] offenses . . . committed [as part of a course of conduct was] so great or unusual that no single prison term . . . adequately reflects the seriousness of the offender's conduct" and (c) the defendant's criminal history make consecutive sentences "necessary to protect the public . . . ." R.C. 2929.14(C)(4)(a)-(c).

{¶ 20} The Supreme Court of Ohio has stated that "[i]n order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 2014-Ohio-3177, ¶ 37. However, the trial court "has

- 7 -

no obligation to state reasons to support its findings." *Id.* Importantly, "a word-for-word recitation of the language of the statute is not required [if] . . . the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings . . . ." *Id.* at ¶ 29. An appellate court cannot infer that any of these mandatory findings were made. *State v. Volz*, 2022-Ohio-4134, ¶ 13 (12th Dist.).

**{¶ 21}** The trial court made R.C. 2929.14(C)(4)(b)'s finding that the harm caused by Kofron's course of conduct merited consecutive prison terms. Immediately after finding that the harm was so great or unusual that a single term does not adequately reflect the seriousness of Kofron's conduct, the trial court found that Kofron's abuse of Andrea was a "course of conduct" when it observed that the abuse took place over the course of years and at different stages of her life. The trial court's findings during the sentencing hearing adequately complied with R.C. 2929.14(C)(4)(b) without being a "word-for-word" recitation of it.

**{¶ 22}** Kofron's stresses that the court's statement that Kofron's "individual acts . . . that took place over different time periods, and different stages of the victim's life" shows his crimes cannot be considered a course of conduct. This argument borders on the pedantic and again loses sight of greater context. The trial court's findings clearly emphasize that Kofron had sexually abused his minor daughter repeatedly over period of years. This is sufficient. *See e.g. State v. Downing*, 2024-Ohio-381, ¶ 16 (trial court's finding that abuse of victim "ha[d] been ongoing multiple times over the course of an extended period of time" sufficient under R.C. 2929.14(C)(4)(b)).

**{¶ 23}** After concluding the trial court did make a "course of conduct" finding under R.C. 2929.14(C)(4)(b), we need not consider whether the trial court considered Kofron's criminal history under R.C. 2929.14(C)(4)(c).

**{¶ 24}** This assignment of error is overruled.

**{¶ 25}** Third Assignment of Error:

KOFRON'S CONVICTIONS ARE AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE.

**{¶ 26}** Finally, Kofron claims the jury's verdict was against the manifest weight of the evidence because (1) Andrea was "vague" about her age at the time of the offenses (2) Andrea made the allegations after she had moved from appellant's home and was faced with paying her own bills, and (3) Kofron denied the allegations. In support of this assignment of error, Kofron makes fleeting references to the record.

**{¶ 27}** To determine whether a conviction is against the manifest weight of the evidence, appellate courts must examine "the inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Thompkins*, 78 Ohio St.3d 380, 387, (1997), quoting *Black's Law Dictionary* (6th Ed.1990). Stated differently, during this examination, appellate courts "review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice" that a new trial must be ordered. *State v. Wilks*, 2018-Ohio-1562, ¶ 168.

**{¶ 28}** Kofron's arguments and perfunctory appeals to the record are unconvincing. We have previously noted the difficulties in establishing exact dates of sexual abuse involving children and that such difficulties are "'compounded where the accused and the victim are related or reside in the same household, situations which often facilitate an extended period of abuse. An allowance for reasonableness and inexactitude must be made for such cases.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 12 (12th Dist.), quoting *State v. Elkins*, 2011-Ohio-3611, ¶ 26 (5th Dist.).

{¶ 29} Ultimately, this and the other issues Kofron raise are credibility issues best left for the jury to resolve. In this case, the jury resolved those issues in favor of Andrea after reviewing the evidence, including the controlled call recording that corroborated Andrea's testimony. We determine the jury did not lose its way in resolving conflicts in the evidence, and the verdicts were not against the manifest weight of the evidence.

{¶ 30} This assignment of error is also overruled.

{¶ 31} Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.