[Cite as *State v. Jones*, 2026-Ohio-68.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-11-014 |
| | : | OPINION AND |
| - vs - | | JUDGMENT ENTRY |
| | : | 1/12/2026 |
| ERIC W. JONES, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2023-2199


Zac Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecuting Attorney, for appellee.

Christopher J. Pagan, for appellant.


## O P I N I O N


**SIEBERT, J.**

{¶ 1}  Appellant, Eric Jones, appeals his conviction and sentence in the Brown

County Court of Common Pleas for multiple sexual offenses. Upon review, we find that two of Jones' convictions and sentences for kidnapping (Counts 5 and 9) must be vacated due to violations of the rule prohibiting duplicity. One conviction and sentence for GSI (Count 12) must be vacated due to insufficient evidence. Several other convictions (Counts 2, 3, 7, 8, and 11) are supported by sufficient evidence, do not implicate concerns of duplicity, and we therefore affirm. We affirm the trial court's judgment related to its admission of victim-impact testimony and the introduction of evidence detailed in Jones' third assignment of error. The record supports the trial court's findings related to imposing consecutive sentences, and we affirm those findings. Two GSI convictions (Counts 6 and 10), which were previously merged with the now-vacated kidnapping counts (Counts 5 and 9), are no longer merged, and therefore Jones has not been sentenced for Counts 6 and 10.

{¶ 2} We vacate Jones' convictions for the kidnapping convictions for Counts 5 and 9, the GSI conviction for Count 12, and affirm the trial court's judgment in all other respects. We remand the matter for resentencing consistent with this Opinion.

## I. Factual and Procedural Background

{¶ 3} This case centers on the disclosure of sexual abuse involving three victims: Alice, Beth, and Chloe.[1] At the time of the offenses, Jones was a long-haul truck driver. He typically traveled for work during the week and returned home on weekends. Jones resided with his wife, Angela, who operated an in-home daycare from their residence, in Brown County, Ohio.

{¶ 4} In 2022, Beth came forward with her account, prompting further inquiry and

---

1. We are using pseudonyms for the victims for the purposes of privacy and readability. *State v. Kofron*, 2024-Ohio-3233, ¶ 2, fn. 1 (12th Dist.). This opinion refers to "R.R." as Alice, "H.J." as Beth, and "H.S." as Chloe.

resulting in similar reports from Alice and Chloe. Following these disclosures, a Brown County Grand Jury indicted Jones on 12 felony counts, including kidnapping, rape, unlawful sexual contact with a minor, and gross sexual imposition ("GSI"). Jones entered a plea of not guilty, and the case proceeded to a jury trial. The State alleged that Jones abused Alice between 2000 and 2005 and abused Beth and Chloe between 2010 and 2018—all three girls would have been under the age of 13 when the alleged abuse took place.

*Alice*

{¶ 5}  Alice is Angela's younger sister, which makes Jones her brother-in-law. There is a 14-year age gap between Alice and Angela, and as a result, Alice often viewed her sister more as a mother-figure than a sibling. During her childhood, Alice frequently visited Angela and Jones at their home. She recalled details about the house and her interactions with neighborhood children. One of her memories included staying up late and playing video games with Jones. However, she also remembered that Jones would often ask her to rub his back—something that made her feel uncomfortable.

{¶ 6}  As Alice got older, she noticed that Jones' behavior toward her became more overtly sexual. She testified that the first incident of sexual abuse occurred one evening while Angela was not home. Alice stated that she was in the bedroom shared by Angela and Jones but could not remember how she got there. She testified "I just remember being awake and him inserting his penis anally and me telling him it hurt. I don't remember a lot afterwards or if he stopped right then and there. But I do remember several times having to repeat myself like, 'This - - this hurts.'"

{¶ 7}  Alice did not report the abuse immediately. However, around 2002 or 2003, she confided in a friend, Courtney Scott, who reportedly shared the information with her stepmother, Kristi Scott. At the time, Kristi was employed by the Brown County

Department of Job and Family Services. Around this same period, Angela became aware of the allegation and confronted Alice in the presence of Jones, Courtney, and Kristi. During the confrontation, Alice recanted her allegation. Alice testified:

> I did tell them that I was lying. And, what they didn't believe me for I pushed and displaced blame to Courtney that she had fabricated the rest. It was never revisited. Our families kind of dropped it.
>
> I do remember [Kristi] telling me, "Are you sure you're lying?" That, "Due to my job, it's mandatory that I report this? I just want to be certain." And I'm like, "Yes. Yes, I'm lying."

{¶ 8} After the initial disclosure, Alice stayed away from Angela and Jones for a period of time. However, she eventually resumed visiting their home. During one of those visits, Jones again sexually abused her. According to Alice:

> We were in the living room. I don't know quite why I cooperated. I didn't scream. I didn't kick. But, I was laying on the floor in the living room over by what would have been the end table. And, I remember [Jones] inserting his penis vaginally, telling me he was going to take my virginity.
>
> And, [afterwards] I remember him telling me I was going to spot, which I did.

{¶ 9} Although Alice did not testify as to the specific dates that Jones inserted his penis into her anus and vagina, she did testify that both incidents occurred before she started her period, which occurred when she was around 13.

*Beth*

{¶ 10} Beth is the adopted daughter of Jones and Angela. She described having a generally positive relationship with Jones and recalled how they would spend time together building things, like wooden knives. However, she also remembered instances when Jones behaved in ways that she recognized as inappropriate.

{¶ 11} Beth explained that Jones would take her into his bedroom and rub ointment

on her vagina with his finger. Beth testified:

Q. When - - when he would take you to the bedroom, where - - where would this happen, inside the bedroom?

A. On the bed.

Q. Do you know where your mom would be, at tho - - those times?

A. No.

Q. Was she out of the house or in the house?

A. I think she was out.

Q. Okay. What would happen when he would put you on your bed, would you - - do you remember? Did you have clothes on?

A. I didn't have pants.

Q. Okay. How did your pants come off?

A. He would tell me to take 'em off.

. . .

Q. Okay. And when you would - - would - - when you would take them off, what would he do?

A. He would rub the ointment.

Q. On your vagina?

A. Yeah.

Q. What part of his body would he use to do that?

A. His finger.

Q. Would he say anything to you about why he was doing that?

A. He said I had a rash.

Q. Do you remember having a rash?

A. No.

When asked how many times this abuse occurred, Beth stated that it occurred "multiple times."

> Q. When you say, "multiple," or, can you give me an idea? Are we talking clearly more than two?
>
> A. Yeah.
>
> Q. More than five?
>
> A. I don't know.
>
> Q. Okay. Would there be any - - would each time that that happened, was it with the ointment or the cream?
>
> A. Yeah.
>
> Q. And so when you say, "more than two," you're saying at least three?
>
> A. Yeah.

Beth testified that she was also abused by Jones in a different way.

> Q. Was there ever a time that something other than that [the ointment] happened with him that you know was - - was wrong?
>
> A. Yeah.
>
> Q. All right. Can you tell the Jury about that?
>
> A. He rubbed himself on me.
>
> Q. Okay. Where did that happen?
>
> A. In the bed.
>
> Q. How did you get to the bedroom; do you recall?
>
> A. I don't know.
>
> Q. It was his bed?
>
> A. Yeah.
>
> Q. How would you be positioned in the bed?

A. I would be on my side.

Q. And how would he be? And we're talking about the Defendant, right?

A. Yeah.

Q. How would he be positioned?

A. Behind me.

Q. Would - - would you have clothing on?

A. Yeah, my pants were pulled down.

. . .

Q. Did you have underwear on?

A. I think he pulled those down, too.

Q. And then what would he do after pulling down your pants and underwear?

A. He would grab himself.

Q. What part of his body?

A. His penis.

Q. Would touch you where?

A. On my butt.

Q. Now, [Beth], I - - I know this is hard to talk about, but when he would - - let's go back to - - when he would rub the ointment on you, did his hand, his fingers, did they rub the outside of your vagina or the inside?

A. Outside.

Q. But, bare skin to skin?

A. Yeah.

Q. And when he - - the - - the second incident you described where he would lay behind you and his penis would touch your butt, would his penis penetrate or just touch your butt?

A. Just touch.

Q. How - - how - - how off - - how often did that happen, the second incident?

A. Multiple, I don't know how many.

Q. So both these different types of things happened more than once?

A. Yeah.

{¶ 12} Beth testified that she was "younger" when these incidents occurred and remembers she was wearing blue kiddie PJs. She also testified that these incidents occurred when they lived in the house on Fairground Drive and after Jones was injured in 2016, when she was ten.

*Chloe*

{¶ 13} Chloe was one of the children enrolled in Angela's in-home daycare. She also recalled instances where she was alone with Jones and felt pressured to do things against her will. Chloe testified that these incidents began when she was about nine and continued for a couple of years, but that they all occurred when she was under thirteen. During her testimony, Chloe described a typical incident where Jones would isolate her in his truck to facilitate the abuse:

Q. How would he get you to the semi?

A. Some of it, I don't remember. I feel like sometimes he took me. Like, I was inside. I loved to clean, when I was little. And he would tell me, "Let's go clean my semi." And then he would take me in there. And, that's when everything would start happening.

Chloe then explained what Jones would do:

A. He would - - he would si - - lay down on the back. There was, like, when you walk in the back, there was beds back there. And he would lay down. And he had, like, a hernia on his belly button, or something like that, and he would take my

hand and make me rub it. And then take my hand and make it go down to his penis.

. . .

Q. Do you re - - do you remember how his pants would - - would come down or how he would get his penis out of his pants?

A. He unzipped it, and he would - - he unbuttoned it and unzipped it. And he, like, put it down.

Q. What would he have you do, with his penis?

A. He would take his hand from his belly button and go down and make me basically jack him off.

. . .

Q. Would he have an erection, when that would happen?

A. Yes, sir.

Though Chloe testified that the abuse occurred on more than one occasion, she was unclear about the number of times it happened:

Q. [Chloe], how many times - - if you have any idea, how many times did you go inside the Defendant's truck?

A. I'm not sure on the exact time, but I know it was at least three different times, a handful of times.

Q. Okay. Would - - would the same thing happen each time?

A. Yes.

Q. Okay. So each time that - - that you went into that truck, he would have you touch his penis?

A. Yes, sir.

Q. The same way, as what you just described?

A. Yes, sir.

Chloe also recalled one specific incident when someone nearly caught them. In response, Jones sprayed her hands with Windex to make it appear as though she had simply been

cleaning.

*Guilty Findings and Sentencing*

{¶ 14} The State charged Jones with one count of kidnapping for each victim. In addition, Jones faced two counts of rape (one vaginal and one anal) and one count of unlawful sexual conduct with a minor involving Alice. The State charged him with three counts of GSI involving Beth, and three counts of GSI involving Chloe. Although Jones requested a bill of particulars, the State did not provide one.

{¶ 15} During the trial, the State called the three victims to testify, along with medical and law enforcement personnel. Additional witnesses included Beth's sister, Sarah, and their mother, Angela, both of whom provided background testimony. As pertinent to a later assignment of error, the State asked the victims, along with Sarah and Angela, to describe how the abuse allegations affected their family. Sarah testified that the situation had "devastated" the family, and Angela described the experience as a "nightmare." The victims offered similar descriptions of its impact.

{¶ 16} In his defense, Jones called "Chuck," a witness identified by Alice being awake and in the same room with Jones and her when Jones vaginally raped her. Chuck, however, denied witnessing any such conduct. Jones also called Kristi Scott, the stepmother of Courtney Scott, who was an employee of the Brown County Department of Job and Family Services. Kristi testified that she had never been informed of any abuse involving Alice and stated that, had she been, she would have reported it in accordance with her duties as a mandatory reporter of child sexual abuse.

{¶ 17} In its closing argument, the State asserted that the kidnapping charges were connected to the incidents of sexual abuse. The State argued that multiple alleged instances of abuse could independently support the kidnapping charges.

{¶ 18} During deliberations, the jury sought clarification regarding the charges

related to Chloe, specifically asking whether the three counts of GSI pertained to separate incidents. The trial court responded that this was a factual determination for the jury to make based on the evidence presented during trial.

{¶ 19} Following deliberations, the jury returned a verdict finding Jones guilty on all counts. At sentencing, the trial court merged several related charges and imposed an aggregate prison term of 57 years to life. The table below summarizes the merged counts and the corresponding sentences imposed by the court:

| Count | Victim | Charge | Sentence |
|---|---|---|---|
| 1 | Alice | Kidnapping | Merged with Count 2 |
| 2 | Alice | Rape (Anal intercourse) | Life with eligibility for parole after 10 years |
| 3 | Alice | Rape (Vaginal intercourse) | 5 years; consecutive to Count 2 |
| 4 | Alice | Unlawful Sexual conduct with a minor | Merged with Count 3 |
| 5 | Chloe | Kidnapping | 15 years to life; consecutive to Counts 2 and 3 |
| 6 | Chloe | Gross sexual imposition (causing Chloe to touch Jones' penis in the truck) | Merged with Count 5 |
| 7 | Chloe | Gross sexual imposition (causing Chloe to touch Jones' penis in the truck) | 36 months; consecutive to Counts 2, 3, and 5 |
| 8 | Chloe | Gross sexual imposition (causing Chloe to touch Jones' penis in the truck) | 36 months; consecutive to Counts 2, 3, 5, and 7 |
| 9 | Beth | Kidnapping | 15 years to life; consecutive to Counts 2, 3, 5, 7, and 8 |
| 10 | Beth | Gross sexual imposition (Jones touching his penis to Beth' buttocks) | Merged with Count 9 |
| 11 | Beth | Gross sexual imposition | 36 months; consecutive to Counts 2, 3, 5, 7, 8, and 9 |

- 11 -

| | | | |
|---|---|---|---|
| | | (touching Beth's vagina with ointment) | |
| 12 | Beth | Gross sexual imposition (touching Beth's vagina with ointment) | 36 months; consecutive to Counts 2, 3, 5, 7, 8, 9, and 11 |

{¶ 20} Jones now appeals his conviction and sentence, raising four assignments of error for review.

## II. Appeal

### A. Merger and Lack of Final Appealable Order

{¶ 21} Both the United States Constitution and the Ohio Constitution protect criminal defendants from double jeopardy, and Ohio codified this constitutional protection. *See* U.S. Const., amend. V, XIV; Ohio Const., art. I, § 10; R.C. 2941.25. Protection from double jeopardy means that a criminal defendant may not be prosecuted for the same offense after either acquittal or conviction, but it also means that a criminal defendant may not receive multiple punishments for the same offense. *State v. Ruff*, 2015-Ohio-995, ¶ 10. If a defendant is charged with two or more counts of allied offenses of similar import, based on the same conduct by the defendant, the defendant may be convicted of only one of the counts. R.C. 2941.25(A).

{¶ 22} When a defendant has been found guilty on multiple counts, the court must "merge" any allied offenses of similar import. The prosecution elects which offense it wishes to pursue for sentencing, and the trial court sentences the defendant on that elected offense. *See State v. Sperry*, 2025-Ohio-2626, ¶ 39 (12th Dist.). A "conviction consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis in Original; Cleaned up.) *State v. Whitfield*, 2010-Ohio-2, ¶ 12. Merger impacts our jurisdiction to review counts on appeal—this court only has the jurisdiction to review counts that include both a guilty verdict and a sentence. *Sperry* at ¶ 39. "Absent the

imposition of sentence on each and every offense for which a defendant was convicted, there is no final appealable order." *State v. Cottrell*, 2023-Ohio-3932, ¶ 22 (12th Dist.) (collecting cases); Crim.R. 32(C) ("A judgment of conviction shall set forth the fact of conviction *and* the sentence.") (Emphasis added.). Therefore, when one count is merged into another, this court lacks the authority to review the unsentenced count for any sufficiency or weight of the evidence argument. *Sperry* at ¶ 39.

{¶ 23} The jury found Jones guilty for one count of kidnapping related to Alice, but the trial court did not sentence Jones for this offense because it merged with the anal rape count for purposes of sentencing. The jury found Jones guilty of three counts of GSI involving Beth and three involving Chloe. But the trial court did not sentence Jones for the GSI conviction for Count 6 related to Chloe and the GSI conviction for Count 10, which involved Jones touching his penis to Beth's buttocks. The trial court merged these GSI convictions with the related kidnapping charges. The State elected to proceed on the kidnapping offenses, and the trial court only sentenced Jones for the kidnapping offenses for Beth and Chloe.

{¶ 24} Because the trial court imposed no sentence on the merged kidnapping count involving Alice and the merged GSI counts involving Chloe and Beth, no final, appealable orders exist for those convictions, and this court lacks jurisdiction to review arguments related to those counts. Our lack of jurisdiction impacts several assignments of error Jones asserts and will be noted where appropriate.

**B. Kidnapping Convictions and Duplicity**

{¶ 25} In his first assignment of error, Jones argues that his kidnapping convictions were duplicitous and violated multiple constitutional and procedural protections. Specifically, he contends that the charges contravened Criminal Rule 8(A), his right to be indicted by a grand jury under Article I, Section 10 of the Ohio Constitution, his right to

receive adequate notice of the charges under both Article I, Section 10 and the Sixth Amendment, his right to a unanimous jury verdict, and his protection against double jeopardy.

*Standard of Review*

{¶ 26} Before addressing the merits, we note that Jones argues the trial court erred as a matter of law in permitting the duplicitous kidnapping charges to be prosecuted, so a de novo standard of review should apply. *State v. Faggs*, 2020-Ohio-523, ¶ 13. The State, on the other hand, contends that Jones failed to object to this issue at trial and therefore waived all but plain error. Crim.R. 52(B); *State v. Warnock*, 2024-Ohio-382, ¶ 32 (12th Dist.). We agree de novo review should apply here.

{¶ 27} The State brought this case against Jones based on a short-form indictment. Jones moved for a bill of particulars, which the State did not provide. "A bill of particulars has a limited purpose to elucidate the conduct of the defendant alleged to constitute the charged offense." *State v. Fairbanks*, 2007-Ohio-4117, ¶ 22 (12th Dist.). From this, we can understand that the question of what conduct related to the charged offenses was at issue in the earliest stage of this case.[2]

{¶ 28} During the State's opening and closing arguments, the State asserted that Jones restrained the victims' liberty without specifying which underlying count of GSI it related to. Trial counsel raised this issue at Jones' motion for acquittal hearing and again during the arguments regarding merger. Specifically, trial counsel asserted that the State's approach to proving kidnapping was flawed, stating "[i]f we were to follow the State's logic on that, regarding the kidnapping, then I guess every Rape is a Kidnapping

---

2. While the request for a bill of particulars is persuasive in considering the context of the case, Jones asserts no error regarding this request, and we do not base our decision on the standard of review on this issue.

. . . that appears to be what they're saying." Although counsel could have articulated the issue more clearly as to each alleged victim, we conclude the same issue applied to the charges for Alice, Beth, and Chloe. Trial counsel sufficiently preserved the question, and we will therefore apply a de novo standard of review. *See Fairbanks* at ¶ 22.

*Duplicity*

{¶ 29} The prohibition against duplicity serves two key purposes: it protects an accused's Sixth Amendment right to receive notice of the nature of the charge and prevents confusion regarding the basis for the verdict. *State v. Fisher*, 2022-Ohio-1363, ¶ 19 (12th Dist.). Although most courts addressing this issue treat the concept as a single doctrine, duplicity manifests in two distinct forms: (1) duplicity in the indictment, and (2) duplicity in the charge. *State v. Blankenburg*, 2012-Ohio-1289, ¶ 130 (12th Dist.) (Ringland, J., concurring in part and dissenting in part).

{¶ 30} Duplicity in the indictment, the more common form, occurs when two or more distinct offenses are alleged in a single count. *Id*.; *State v. Bowling*, 2015-Ohio-360, ¶ 18, fn. 2 (12th Dist.). The Rules of Criminal Procedure prohibit this type of duplicity. Crim.R. 8(A). This form of duplicity can be remedied with a motion to sever or a request for separate trials upon a showing of prejudice. *State v. Moshos*, 2010-Ohio-735, ¶ 75 - 89 (12th Dist.).

{¶ 31} Duplicity in the charge, by contrast, arises when an indictment alleges only one criminal act, but the State introduces evidence of multiple incidents at trial to prove that single charged offense. *Blankenburg* at ¶ 132. Jones' assignment of error concerns duplicity in the charge and, specifically, whether the jury's verdict was unanimous with respect to the kidnapping convictions. Jones argues that the State presented multiple acts to establish a single count of kidnapping for each victim.

{¶ 32} Ohio law regarding duplicity in the charge questions remains largely

- 15 -

unresolved. Given the lack of legal clarity surrounding duplicity in the charge, this court looks to the analysis in a case in which the Supreme Court was not addressing duplicity directly, but in a closely related issue. That is, whether jury unanimity is required in "multiple acts" cases—a theory similar to that of duplicity in the charge. *Blankenburg* at ¶ 139, citing *State v. Gardner*, 2008-Ohio-2787. In *Gardner*, the Court explained that if a single offense can be committed in more than one way, the jury must unanimously agree on the defendant's guilt, but it does not have to unanimously agree on the *means* the defendant used to commit the crime if substantial evidence supports each of the "alternative means." *Id*. at ¶ 49. However, the same is not true if the State alleges the defendant engaged in differing *acts*, any one of which could constitute the crime charged. *Id*. at ¶ 50. In that type of "multiple acts" case, the State must elect the particular act it will rely on for conviction, because the jury must be unanimous that the State proved the defendant committed that particular underlying act beyond a reasonable doubt. *Id*.

*Beth and Chloe*

{¶ 33} After merger, this court only has jurisdiction to consider duplicity as it relates to Jones' kidnapping convictions involving Beth and Chloe.[3] The State alleged that Jones sexually abused Beth on three occasions: once by placing his penis on her buttocks (Count 10)[4] and twice by rubbing ointment on her vagina (Counts 11 and 12). The State alleged that Jones sexually abused Chloe three times by having her masturbate him in his truck (Counts 6, 7, and 8). Specifically, the State indicted Jones for kidnapping Chloe

---

3. Jones' kidnapping conviction for Alice merged with one of his convictions for rape, and the state elected to proceed on the rape charge. The trial court never sentenced Jones for kidnapping related to Alice, and that conviction is not subject to a final appealable order. Therefore, this court has no jurisdiction to consider Jones' arguments related to it. *See Sperry*, 2025-Ohio-2626, at ¶ 39.

4. Count 10, the GSI related to Jones placing his penis on Beth's buttocks merged into the kidnapping conviction for Count 9. As such, this court does not have jurisdiction to consider Count 10 (and Jones did not challenge his conviction for Count 10), but we include this description for context relevant to the duplicity argument.

and Beth (Counts 5 and 9, respectively) pursuant to R.C. 2905.01(A)(4) (prohibiting, as relevant here, moving a person or restraining the liberty of a person under the age of 13 for the purpose of engaging in sexual activity against the victim's will). The State indicted Jones for GSI against Chloe and Beth pursuant to R.C. 2907.05(A)(4) (prohibiting sexual contact with a person under the age of 13). The trial court merged Count 10 (GSI) related to Beth into Count 9 (Kidnapping) and Count 6 (GSI) related to Chloe into Count 5 (Kidnapping) and sentenced Jones for each of these kidnapping charges. Although the record reflects that Jones filed a request for a bill of particulars, the State did not provide one.

{¶ 34} During its closing argument, the State argued that Jones committed kidnapping each time the alleged incidents of sexual abuse occurred. With respect to Count 5, involving Chloe, the prosecutor stated "Count Five is another kidnapping. This one with respect to [Chloe]. Same definitions apply for that kidnapping. That's - - that's for taking her to that truck where he would sexually assault her." Regarding Count 9, involving Beth, the prosecutor stated that "rubbing . . . a child's vagina . . . that's restraint of that child's liberty for a period of time." Jones argues that this amounts to duplicity because the State presented [as relevant here, six] possible acts for the [two] kidnapping counts.[5]

{¶ 35} The State maintains duplicity does not apply to Jones' kidnapping convictions because it could have charged Jones with a separate count of kidnapping corresponding to each sex offense and that its decision to charge only one count per victim ultimately benefitted Jones. This argument amounts to "no harm, no foul." We

---

5. Jones argues the State alleged there were eight possible Kidnapping offenses for the three Kidnapping counts, but as noted, this court does not have jurisdiction to consider arguments related to Alice's Kidnapping, due to merger and the resulting lack of a final appealable order for that count.

disagree.

{¶ 36} The State's contention ignores the issue presented by Jones and relies on speculation as to how a jury might have reached its decision under different charging circumstances. The relevant issue is not whether a jury would have found Jones guilty of additional offenses, but whether the State improperly presented multiple acts in support of a single charged offense. In such a case, the State must either "elect the particular act upon which it relies for a conviction, or the trial court must instruct the jury that it must unanimously agree on the same underlying criminal act proved beyond a reasonable doubt." *Gardner*, 2008-Ohio-2787, at ¶ 50. Here, the State did neither, so there is no way to verify the jury unanimously agreed that the State proved the defendant committed a single, particular act of kidnapping beyond a reasonable doubt.

{¶ 37} We agree the kidnapping counts related to Beth and Chloe suffered from duplicity in the charge because the State did not prove Jones committed a particularized act of kidnapping sufficient to verify jury unanimity. But the State argues any duplicity in the charge problem should be excused.

*State's Alternative Justifications for Duplicity—Course of Conduct and Extending Logan*

{¶ 38} The State appears to assert two additional justifications to excuse charging Jones with one kidnapping offense for multiple acts it alleged could support Jones' conviction. First, it urges this court to excuse any alleged duplicity in the charge because the kidnapping related to a course of conduct of GSI with victims who were children. Second, it asks this court to find kidnapping "incidental" to each charge of GSI, by expanding the reasoning found in *State v. Logan*, 60 Ohio St.2d 126, 130 (1979). We decline to permit either justification in this case because of significant evidentiary concerns or sentencing consequences downstream from those evidentiary concerns.

*Course of Conduct*

{¶ 39} The State argues the kidnapping charged here was for the purposes of engaging in sexual activity and with a sexual motivation, and "Ohio courts have permitted course-of-conduct prosecutions in cases involving multiple acts of sexual abuse perpetuated against child victims." *Blankenburg*, 2012-Ohio-1289, at ¶ 20.

{¶ 40} This court does recognize that a victim of continual sexual abuse may not have a distinct memory of details associated with numerous occasions of such abuse. *State v. Workman*, 2017-Ohio-8638, ¶ 46 (12th Dist.). Therefore, "it is within the confines of due process to permit the state to charge the accused with at least one criminal offense for a specific time period." *Id*. But a kidnapping charge that is incidental to an underlying GSI, without providing more than general, ambiguous claims of the facts supporting the kidnapping, does not avoid such due process concerns. A kidnapping course of conduct charge defeats the jury's ability to determine whether the State met its burden to prove kidnapping beyond a reasonable doubt because of unavoidable evidentiary issues.

{¶ 41} Our review of the record here makes the problems inherent in considering a kidnapping incidental to an underlying GSI as a "course of conduct" offense obvious. The indictments listed the identical time frames for each offense, the State failed to respond to Jones' request for a bill of particulars, and at trial, the State argued that multiple acts could support each kidnapping charge involving Beth and Chloe, with very little evidentiary detail. Beth testified that the incidents of GSI generally happened in Jones' bedroom, but she testified she could not remember how she came to be in his bedroom. The State, in its closing argument, asserted that rubbing ointment on Beth's vagina was "a restraint of that child's liberty for a period of time." Closing arguments are not evidence, so the prosecutor's statements regarding Jones' restraint of Beth cannot support the kidnapping charge. *State v. Frazier*, 73 Ohio St.3d 323, 338 (1995). Chloe testified that

Jones took her to her truck under the guise of cleaning it, for the purpose of sexually abusing her. While the victims' testimony regarding the facts supporting kidnapping was non-specific, the same cannot be said for the testimony regarding the GSI charges.

{¶ 42} The State elicited testimony which provided specific evidence related to Jones' conduct that it argued supported the GSI charges (rubbing ointment, touching penis to buttocks, compelling masturbation), other situational details (in the bedroom, in the truck, arrival of other child, applying Windex), as well as evidence supporting the relevant time periods sufficient to establish the alleged victims were under the age of 13. This type of evidence can support at least one course of conduct GSI charge because the State tied it to repeated instances of child sexual abuse, supported by enough detail and within a defined time period. *Workman*, 2017-Ohio-8638, at ¶ 46.

{¶ 43} While this court does not require the same sort of specificity of evidence for course of conduct childhood sexual abuse charges as it does for other criminal charges, it does require more than "general, ambiguous" claims related to the conduct alleged. *Workman* at ¶ 49. The State did not provide this type of specific evidence to support a course of conduct kidnapping charge alleged to be merely "incidental" to the underlying alleged GSI. Instead, it supported only the type of "general, ambiguous" evidence distinguished in *Workman*.

{¶ 44} In addition to these evidentiary issues, expanding the holding in *Logan* leads to sentencing consequences downstream from those evidentiary concerns.

*Expanding Logan*

{¶ 45} The Supreme Court of Ohio found that "implicit within every forcible rape . . . is a kidnapping," *State v. Logan*, 60 Ohio St.2d 126, 130 (1979). The State urges this court to extend *Logan* to instances where the underlying charge is not forcible rape, but GSI with a victim under 13 (which does not require proof of force).

{¶ 46} The State's argument that we should find the kidnapping "implicit" to GSI in the same way the *Logan* court found it "implicit" to forcible rape ignores the problem created by the required merger of the two offenses. *Logan*'s central question involved whether forcible rape and kidnapping were allied offenses of similar import, requiring merger under R.C. 2941.25. The *Logan* court found when the "restraint or movement of the victim is merely incidental" to the separate, underlying crime of forcible rape, a separate conviction for kidnapping could not be justified. *Logan*, 60 Ohio St.2d at 135. Therefore, the court held the trial court must merge such a kidnapping offense into the rape offense before sentencing. *Id.*

{¶ 47} When a defendant is found guilty of two allied offenses, the court "must accept the state's choice [of which offense to sentence] and merge the crimes into a single conviction for sentencing." *State v. Whitfield*, 2010-Ohio-2, ¶ 24, citing *State v. Brown*, 2008-Ohio-4569, ¶ 41. It strains credulity to imagine the State choosing to proceed to sentencing for the crime which carries the lesser penalty.

{¶ 48} Under *Logan*, a defendant will receive a sentence for committing forcible rape, for which the State provided evidence sufficient to meet its burden of proof. While the defendant may be found guilty of the "incidental" kidnapping, he receives no sentence for that crime because the crimes are merged under the law. But when an "incidental" kidnapping merges with GSI, the State will elect to proceed to sentencing on the kidnapping offense and the opposite result occurs. A defendant will receive a sentence for the "incidental" crime of kidnapping, but will not be sentenced for the GSI, even though that is the crime for which the State offered most, if not all, of its specific evidence. That is exactly what happened to Jones—the State provided evidence proving the specific elements of GSI, and the jury convicted him based on that proof. Yet, he received the greater punishment for the "incidental" kidnapping, for which the State did not offer the

type of specific evidentiary support required even for course of conduct sexual abuse crimes.

{¶ 49} Neither the course of conduct or expansion of *Logan* urged by the State address the fundamental problem of duplicity here, and both proposed justifications present significant evidentiary or sentencing concerns. Given these deficiencies, we agree that the kidnapping charges involving Beth and Chloe were duplicitous. We vacate Jones' kidnapping convictions in Counts 5 and 9. Since the kidnapping conviction related to Alice (Count 1) merged into one of the rape convictions (Count 2), this court has no jurisdiction to review that conviction for duplicity. Therefore, we sustain Jones' first assignment of error in part and find we do not have jurisdiction to consider it in part.

## C. Specificity and Sufficiency of the GSI Convictions

{¶ 50} In his second assignment of error, Jones challenges five of the six GSI convictions—two involving Beth and all three involving Chloe—as being contrary to law. He contends that the State failed to identify distinct incidents of abuse either in the indictment or through its presentation at trial. Although Jones references due process, double jeopardy, and notice concerns, the core of his argument is that the convictions are not supported by sufficient evidence.

{¶ 51} In support, Jones relies on *Valentine v. Konteh*, 395 F.3d 626 (6th Cir.2005), and *State v. Hemphill*, 2005-Ohio-3726 (8th Dist.).

### *Valentine and Hemphill*

{¶ 52} In *Valentine*, the defendant was charged with 20 counts of child rape and 20 counts of felonious penetration, all allegedly occurring over a 10-month period. *Valentine* at 629. The indictment used identical statutory language for each count, and the bill of particulars merely stated that the offenses occurred in the defendant's home. *Id*. at 634. The Sixth Circuit granted habeas relief, finding that the indictment and trial

evidence failed to establish the factual basis for 40 distinct incidents. *Id.* at 632. The only evidence regarding the number of encounters came from the victim, who described a typical abusive episode and estimated how often it occurred. *Id.* at 632-633. The court found that "[g]iven the way that Valentine was indicted and tried, it would have been incredibly difficult for the jury to consider each count on its own." *Id*. at 633.

{¶ 53} In *Hemphill*, the defendant was convicted of 22 counts each of rape and gross sexual imposition with sexually violent predator specifications, 7 counts of rape without specifications, and 22 counts of kidnapping with sexual motivation specifications. *Hemphill* at ¶ 49. Relying on *Valentine*, the Eighth District Court of Appeals held that the State failed to adequately differentiate the counts and, with few exceptions, did not present individualized proof for each charge. *Id.* at ¶ 88, ¶ 112. The court found that the majority of the charges were based on a "numerical estimate unconnected to individual, distinguishable events." *Id.* at ¶ 88.

{¶ 54} We disagree that *Valentine* or *Hemphill* is dispositive authority for Jones. In fact, this court, along with other Ohio districts, has frequently distinguished *Valentine* and *Hemphill*, or highlighted contrasts between the ambiguous testimony in those cases and the more detailed accounts presented in others. *See State v. Morgan*, 2010-Ohio-1720, ¶ 24 (12th Dist.) (victim provided context for the repeated instances of sexual abuse by referencing her age, school year, and homes in which she resided); *State v. Stanforth*, 2017-Ohio-4040, ¶ 43 (12th Dist.) (noting that, unlike *Valentine* and *Hemphill*, the State presented evidence linked to each count, enabling the jury to evaluate each charge independently); *State v. Scott*, 2011-Ohio-6534, ¶ 23 (12th Dist.) (distinguishing *Hemphill* because the victim offered specific and unambiguous testimony regarding the abuse); *State v. Palmer*, 2021-Ohio-4639, ¶ 24 (7th Dist.) ("As appellant acknowledges, we are not bound by *Valentine* and do not follow *Valentine*.").

{¶ 55} Moreover, this court had held that even general testimony may suffice to support a conviction when abuse spans multiple years. In *Workman*, this court stated, "[w]hen the state is faced with a victim of continual sexual abuse who does not have a distinct memory of details associated with numerous occasions, it is within the confines of due process to permit the state to charge the accused with at least one criminal offense for a specific time period." *Workman*, 2017-Ohio-8638, at ¶ 46. The victim in *Workman* described repeated instances of abuse in relation to specific time frames, homes she lived in, and locations where the abuse occurred. Thus, although the testimony was more general in nature, it was more than the "general, ambiguous" claims of abuse present in *Hemphill* and therefore was sufficient to support the convictions. *Id*. at ¶ 49. *See Blankenburg*, 2012-Ohio-1289, at ¶ 28 (no error where the counts were differentiated by the type of offense alleged and the time period).

{¶ 56} The State must be able to meet its burden of proof for each count charged. With victims who were children when continuous sexual abuse allegedly occurred, sufficient evidence of numerous occasions of such abuse within a specified time period can support at least one criminal offense. But if more than one criminal offense is charged for actions the defendant allegedly committed against a child victim, the State must provide sufficient, differentiated evidence to prove each separate offense beyond a reasonable doubt.

*Sufficiency of the Evidence*

{¶ 57} "When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Madden*, 2024-Ohio-2851, ¶ 31 (12th Dist.), citing *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in

a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 58} In this case, Beth and Chloe testified that Jones engaged in sexual contact with them when they were under 13 years old.[6] Based on the evidence presented, the jury convicted Jones for three counts of GSI involving Beth and three counts involving Chloe. Because this court vacated the kidnapping counts related to Beth and Chloe due to duplicity, the trial court has not sentenced Jones for the previously merged GSI convictions and there is no final and appealable order subject to our review for those convictions (Counts 6 and 10).

*Beth*

{¶ 59} Beth testified to experiencing two distinct forms of abuse. In the first, Jones applied ointment to her vagina while they were in his bedroom. In the second, Jones pulled down both his and her underwear and touched his penis to her buttocks.[7] However, apart from the foregoing, no additional evidence was presented regarding specific incidents of abuse. Beth explained that Jones would take her into his bedroom when her mom was out of the house, tell her to take off her pants, and then would rub ointment on her vagina with his finger because he said she "had a rash." Beth testified she did not remember having a rash on her vagina during the relevant time period, and no medical evidence substantiated Beth was treated for a vaginal rash during this time period. When

---

6. We do not list the elements of the offense here, as Jones presents a limited argument focused on the differentiation of the offenses. However, GSI is defined under R.C. 2907.05(A)(4), which prohibits sexual contact with a person under the age of 13. The term "sexual contact" is separately defined in R.C. 2907.01(B) to include any touching of the genitals, buttocks, or pubic region.

7. For purposes of resolving this assignment of error, we note that, with respect to Beth, Jones only challenges Counts 11 and 12, which relates to allegations that he touched her vagina with his hand. Since this court has no jurisdiction to decide sufficiency related to touching his penis to her buttocks (Count 10) due to merger, we would not analyze a sufficiency claim for that count even if Jones had raised it.

asked how many times, this abuse occurred, Beth stated that it occurred "multiple times," which she agreed meant "at least three" times.

*Chloe*

**{¶ 60}** Chloe also testified about the abuse she suffered. She explained that, as a child, she enjoyed cleaning, and Jones exploited this by luring her out to his truck under the pretense of helping. Once inside the truck, Chloe stated that Jones would lay back and have her rub his erect penis. Chloe confirmed this happened "at least three different times." Unlike Beth, Chloe testified that she experienced only one form of abuse. i.e., Jones having her touch his penis. However, Chloe recalled that one time someone else nearly caught them and Jones sprayed Windex on her hands so they would smell as though she had simply been cleaning.

*Analysis*

**{¶ 61}** Upon reviewing the record in the light most favorable to the prosecution, including the testimony and evidence detailed in the factual background section of this opinion, we conclude that a rational trier of fact could have found the essential elements of GSI proven beyond a reasonable doubt as to three counts: one involving Beth and two involving Chloe.

**{¶ 62}** Regarding Beth, the jury convicted Jones for two reviewable counts of GSI, which correspond to her testimony describing the abuse where Jones applied ointment to her vagina when she was under the age of 13 (Counts 11 and 12). The State only provided sufficient evidentiary support for one count. *See Hemphill*, 2005-Ohio-3726, at ¶ 88; *Rodriguez*, 2025-Ohio-53, at ¶ 46. The State's attempt to charge two counts of GSI appears to rest solely on Beth's general statement that Jones rubbed ointment on her vagina "multiple" times, and her agreement that this meant "at least three" times. The second GSI conviction is not anchored in specific testimony or undifferentiated,

contextualized details. *Morgan*, 2010-Ohio-1720, at ¶ 24 (12th Dist.); *Stanforth*, 2017-Ohio-4040, at ¶ 43 (12th Dist.). Moreover, unlike in *Workman*, where the State distinguished offenses by year, the prosecution made no such effort in the present case. *Workman*, 2017-Ohio-8638, at ¶ 46 (12th Dist.).

{¶ 63} When the victim was a child and evidence establishes the relevant time frame, evidence regarding multiple, undifferentiated incidents of abuse can support *one* count of the same offense. *Blankenburg*, 2012-Ohio-1289, at ¶ 28-31. But here, the State tries the opposite. It argues evidence of multiple incidents of abuse, undifferentiated by time, place, or other contextual details can support *multiple* counts of the same offense. Not so. Even viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have only found the essential elements of GSI proven beyond a reasonable doubt, as it relates to one count of Jones rubbing ointment on Beth's vagina. Therefore, we find sufficient evidence supported the GSI conviction for Count 11, but we vacate Jones' conviction for Count 12 due to insufficient evidence. The multiple counts of GSI related to Chloe fare better.

{¶ 64} Chloe testified that Jones abused her by having her touch his erect penis in his semitruck, stating this occurred "at least three different times" and included enough detail about the time period to establish she was under the age of 13. Pursuant to *Workman* and *Blankenburg*, this evidence supports one count of GSI related to multiple, undifferentiated incidents. In addition, she provided a specific detail which differentiated one incident from the others—when someone nearly discovered them in Jones' truck, prompting Jones to spray her hands with Windex. Therefore, in viewing the evidence in the light most favorable to the prosecution, we find sufficient evidence to support the two, reviewable GSI convictions—Counts 7 and 8—related to Chloe: one for the multiple, undifferentiated incidents and one for the Windex incident.

**{¶ 65}** The State provided sufficient evidence to support Jones' conviction for one count of GSI involving Beth and two counts of GSI involving Chloe. We vacate one GSI conviction related to Beth (Count 12) and affirm two GSI convictions related to Chloe (Counts 7 and 8). Therefore, we sustain Jones' second assignment of error in part and overrule it in part.

### D. Admission of Unduly Prejudicial Evidence

**{¶ 66}** In his third assignment of error, Jones contends that the State elicited improper victim-impact testimony and introduced irrelevant and unduly prejudicial evidence. He concedes that no objection was raised at trial; therefore, this court's review is governed by the plain-error standard.

**{¶ 67}** Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error exists where there is an obvious deviation from a legal rule that affected the defendant's substantial rights by influencing the outcome of the proceedings. *State v. Myers*, 2020-Ohio-59, ¶ 27 (12th Dist.). "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *Id*. Notice of plain error is taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Harner*, 2020-Ohio-1184, ¶ 31 (12th Dist.).

**{¶ 68}** Victim-impact evidence that relates solely to a victim's personal characteristics or the emotional effect on the victim's family is generally inadmissible at trial. *State v. Clinton*, 2017-Ohio-9423, ¶ 126. While such evidence may be admissible if it pertains to facts surrounding the offense, trial courts typically exclude it when it is irrelevant to the determination of guilt and serves primarily to inflame the jury's emotions. *Id*., citing *State v. Fautenberry*, 1995-Ohio-209, ¶ 17; *State v. Priest*, 2007-Ohio-5958, ¶

41 (8th Dist.). Nevertheless, victims may testify about how the crime affected their lives when those circumstances are relevant to understanding the offense as a whole. *Priest* at ¶ 41, citing *State v. Williams*, 2003-Ohio-4164, ¶ 43.

{¶ 69} Several nonexclusive factors determine whether victim-impact evidence is too prejudicial to be admissible: (1) the length of the testimony, (2) whether there were visible emotional reactions, (3) whether the victim-impact witness used emotionally charged language, and (4) the number of victim-impact witnesses. *State v. Graham*, 2020-Ohio-6700, ¶ 126.

{¶ 70} Jones argues that the State improperly elicited victim-impact testimony from several witnesses during trial. Specifically, he challenges the testimony of Beth's sister, Sarah, and their mother, Angela, who were asked about the impact the abuse had on the family. Sarah testified that the situation had "devastated" the family, while Angela described the ordeal as a "nightmare." The State posed similar questions to the victims. Beth responded that the experience was "not good." Alice testified that the abuse had caused intimacy issues with her husband, and Chloe described a lingering fear of rest stops and semi-trucks. Jones further asserts that the State introduced further improper character evidence through testimony suggesting he was a poor father, viewed pornography, and lacked character.[8]

{¶ 71} Following review, we find Jones' arguments to be without merit. In this case, Jones' defense theory was that he was innocent and that the victims fabricated the

---

8. Jones also offers a cursory, one-sentence argument in this assignment of error, asserting that the jury heard improper evidence and argument regarding the kidnapping charge involving Alice. He claims that the statute of limitations began to run before Alice reached the age of majority, alleging that Kristi Scott—Courtney's stepmother and an employee of a children's services agency—had been informed of the abuse. However, this argument is undeveloped. App.R. 16(A)(7); App.R. 12(A)(2). Moreover, even if the charge was time-barred, Jones fails to explain how the admission of this testimony constituted plain error or why it was otherwise inadmissible. *See State v. Griffin*, 2025-Ohio-1403, ¶ 16 (12th Dist.) (other-acts evidence may be admissible even in the absence of a conviction).

allegations. Accordingly, testimony regarding the impact of the abuse was relevant to assess the victims' credibility and to rebut the defense theory. Moreover, the testimony was brief and not overly emotional or inflammatory. *See State v. Milam*, 2006-Ohio-4742, at ¶ 74-77 (8th Dist.) (victim testimony describing humiliation, bullying, and suicidal ideation deemed not unduly prejudicial). Additionally, Jones fails to articulate how the admission of this testimony meets the standard for plain error.

{¶ 72} We likewise reject Jones' remaining claims. Evidence that Jones showed Beth pornography was admissible to demonstrate grooming behavior. *State v. Boles*, 2013-Ohio-5202, ¶ 23 (12th Dist.). Further, Jones fails to identify any specific testimony supporting his assertions that the State portrayed him as a poor father or lacking character. His citations to the transcript lack explanation and fail to establish plain error. Under App.R. 16(A)(7), an appellant must present arguments with supporting citations and reasoning, and App.R. 12(A)(2) permits this court to disregard undeveloped assignments of error. *State v. Philpot*, 2024-Ohio-2596, ¶ 32 (12th Dist.). It is not the role of this court to search the record and construct arguments on Jones' behalf.

{¶ 73} Accordingly, we overrule Jones' third assignment of error.

**E. Sentencing**

{¶ 74} In his fourth assignment of error, Jones argues that his sentence was contrary to law. A felony sentence is reviewed under the standard in R.C. 2953.08(G)(2). *Warnock*, 2024-Ohio-382, at ¶ 64. That provision states that an appellate court may modify or vacate a sentence if the court finds by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. *State v. Gable*, 2024-Ohio-293, ¶ 8 (12th Dist.).

{¶ 75} A consecutive sentence is contrary to law where the trial court fails to make the consecutive sentencing findings required by R.C. 2929.14(C)(4). *State v. Wood*,

2020-Ohio-422, ¶ 9 (12th Dist.). Pursuant to R.C. 2929.14(C)(4), a trial court must engage in a three-step analysis and make certain findings before imposing consecutive sentences. *Id*. Specifically, the trial court must find that (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) [as relevant here]:

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

R.C. 2929.14(C)(4).

{¶ 76} The record reflects that the trial court made the findings required by R.C. 2929.14(C)(4). Nonetheless, Jones argues that the trial court erred in ordering Jones to serve his time for the sentences related to Beth consecutive to the sentences related to Chloe, which in turn were ordered to be served consecutively to the sentences related to Alice. We disagree.

*Course of Conduct*

{¶ 77} Jones first contends that the offenses were not committed as part of course of conduct. While he acknowledges that the offenses shared a common sexual motivation, he argues that they were distinct in nature because they were committed years apart, involved different victims, and encompassed different types of sexual acts. Therefore, he maintains that the statutory criteria for a course of conduct were not met.

{¶ 78} Despite Jones' arguments, courts have consistently held that a "course of conduct" may be established by "some connection, common scheme, or some pattern or psychological thread that ties offenses together." *State v. Cooper*, 2021-Ohio-4057, ¶ 53

(11th Dist.), citing *State v. Summers*, 2014-Ohio-2441, ¶ 14, (2d Dist.); *State v. Sapp*, 2004-Ohio-7008, syllabus.

{¶ 79} In this case, the record demonstrates that Jones sexually abused three minor children on numerous occasions over several years, exploiting their vulnerabilities based on age, lack of knowledge, and inability to protect themselves. *State v. MacPhereson*, 2024-Ohio-5359, ¶ 31 (12th Dist.) (finding three courses of conduct supported consecutive sentences where the defendant engaged in repeated sexual abuse of two pre-teen girls); *State v. Jewell*, 2021-Ohio-32, ¶ 17 (3d Dist.) (a course of conduct supported where the defendant sexually abused three minor children over several years); *State v. Bulger*, 2020-Ohio-4602, ¶ 16 (6th Dist.) (sexual abuse of two stepdaughters over several years constituted a course of conduct).

{¶ 80} After this court's findings related to merger, duplicity, and sufficiency, Jones' two rape convictions related to Alice, two GSI convictions related to Chloe, and one GSI conviction related to Beth remain. As analyzed above, Alice testified as to the two rapes, and Beth and Chloe testified as to multiple, undifferentiated instances of sexual abuse within a defined time period, sufficient to sustain at least one "course of conduct" GSI conviction for each. *See supra* at B. and C. Therefore, the record supports a finding of three courses of conduct—one against Alice, one against Beth, and one against Chloe.

{¶ 81} And "at least two of the multiple offenses committed" were part of at least "one [ ] course of conduct." The two Rape offenses were part of the course of conduct Jones committed against Alice. Two GSI offenses were part of the course of conduct Jones committed against Chloe. Another GSI offense was part of the course of conduct committed against Beth.

{¶ 82} Slight factual differences between the offenses do not preclude the finding of a course of conduct. *Cooper* at ¶ 54. That Jones committed different sexual acts on

the victims, years apart, does not undermine this conclusion. Jones repeatedly acted with a sexual motivation and preyed upon the victims to whom he had access, often engaging in grooming behaviors such as showing them pornography or requesting back rubs. He would then isolate the victims and commit prohibited sexual conduct.

{¶ 83} Although we vacated several of Jones' convictions based on duplicity or insufficient evidence, the sentences remaining were subject to the trial court's finding that "[a]t least two of the multiple offenses were committed as part of one or more courses of conduct." Likewise, the remaining sentences were all included in the trial court's order that Jones serve his time for the sentences related to Beth consecutively to the sentences related to Chloe, which in turn were ordered to be served consecutively to the sentences related to Alice.

{¶ 84} Therefore, this court's judgment vacating the convictions for Counts 5, 9, and 12 will need to be addressed upon remand, but this judgment does not disturb the trial court's findings supporting consecutive sentences. In all other respects, the trial court's judgment on the remaining convictions is affirmed. *See Workman*, 2017-Ohio-8638, at ¶ 93.

*Remaining Arguments*

{¶ 85} Jones raises two additional issues for review. First, he argues that his prison term of 57 years to life is disproportionate. Second, he contends that the trial court erred by failing to merge the GSI convictions with the kidnapping convictions related to Beth and Chloe. These arguments are moot because several of Jones' convictions and corresponding sentences have been vacated, including those for kidnapping Chloe and Beth.

{¶ 86} Therefore, we overrule Jones' fourth assignment of error in part and find it moot in part.

## Conclusion

**{¶ 87}** Judgment reversed and vacated in part, as it relates to Jones' convictions and sentences for kidnapping Beth and Chloe (Counts 5 and 9) and one conviction and sentence for GSI related to Beth (Count 12). *See supra* at B. and C.

**{¶ 88}** Judgment affirmed in part, as it relates to the trial court's admission of victim-impact testimony and the introduction of evidence detailed in Jones' third assignment of error. *See supra* at D.

**{¶ 89}** Judgment affirmed in part, as it relates to Jones' convictions and sentences for Counts 2, 3, 7, 8, and 11. Two GSI convictions (Counts 6 and 10), which were previously merged with the now-vacated kidnapping counts (Counts 5 and 9), are no longer merged, and therefore Jones has not been sentenced for Counts 6 and 10. *See supra* at B., C., and E.

**{¶ 90}** We remand this matter for resentencing consistent with this opinion.

BYRNE, P.J., and M. POWELL, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed in part, reversed in part, and this cause is remanded for resentencing consistent with the above Opinion.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 50% to appellant and 50% to appellee.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Mike Powell, Judge

/s/ Melena S. Siebert, Judge